### RECTOR v. EVANS. (No. 672-4564.)

(Commission of Appeals of Texas, Section B. Dec. 8, 1926.)

**1. Trial ⊂═25(9)—Admission of cause of action for privilege of opening and closing admits facts shown by note sued on and nonpayment thereof (district and county court rule 31).**

Amount of principal, interest, and attorney's fees and place of payment, shown by note sued on, and fact that it was past due and unpaid, were admitted by defendant's filing of admission of cause of action, under district and county court rule 31, to obtain privilege of opening and concluding evidence and argument.

**2. Evidence ⊂═385—Written instrument, executed and delivered without fraud, accident, or mistake, cannot be orally contradicted.**

Written instrument, executed and delivered without fraud, accident, or mistake, proves itself, and cannot be contradicted by oral evidence.

**3. Pleading ⊂═8(15)—Allegations that plaintiff knew he could not recover on note against others than defendant and represented that he would, without intending to, held mere conclusions, not presenting issue of fraud.**

In action on note, which defendant alleged that he executed with understanding that it should not bind him unless plaintiff recovered judgment against other parties, statement in answer that plaintiff knew he could not recover against them because of certain information in their possession and represented that he would do so before demanding payment by defendant, without intending to carry out agreement, *held* mere conclusions not presenting issue of fraud in execution or delivery of note.

**4. Evidence ⊂═444(6)—Oral evidence of agreement that note should not bind defendant unless plaintiff recovered judgment against others held inadmissible (Rev. St. 1925, art. 5932, § 16).**

Oral testimony as to agreement that note sued on was not to bind defendant, unless plaintiff recovered judgment against other parties, *held* inadmissible, in absence of fraud, accident, or mistake, as contradicting terms of written instrument; agreement not relating to delivery of note within Rev. St. 1925, art. 5932, § 16, but to its payment or nonpayment on certain contingency.

Error to Court of Civil Appeals of Eleventh Supreme Judicial District.

Action by J. S. Rector against M. C. Evans. A judgment for defendant was affirmed by the Court of Civil Appeals (278 S. W. 924), and plaintiff brings error. Reversed and rendered.

Jno. W. Birdwell, Ritchie & Rauspot, and Geo. M. Ritchie, all of Mineral Wells, for plaintiff in error.

Chandler & Pannill, of Stephenville, for defendant in error.

SHORT, J. The opinion of the Court of Civil Appeals, affirming the judgment of the district court rendered in favor of the defendant in error, is to be found in 278 S. W. 924. This is a suit based upon a promissory note executed by the defendant in error, payable to the plaintiff in error, for the sum of $1,033.54. There are nine assignments of error in the application, all of which refer to two matters; one being the alleged error of the Court of Civil Appeals in holding that the trial court did not err in permitting the defendant in error to testify to the defensive matters set out in his answer, and the other that the Court of Civil Appeals did not err in holding that the trial court correctly permitted the defendant in error to open and conclude the argument.

It appears from the record that the parties to this litigation with others were joint obligors on certain notes executed in winding up the affairs of the Gordon Gin & Milling Company, a corporation, and that this particular note represented the pro rata portion as claimed by the plaintiff in error due by the defendant in error of the aggregate of these obligations. It also appears from the record that the plaintiff in error was the manager of the corporation and had exclusive control of the affairs of the corporation, which, having become insolvent and its property had been sold, the plaintiff in error and the defendant in error, together with two others, having purchased it for cash, distributed the proceeds among the creditors of the corporation. However, these obligations of the corporation had been underwritten by some of the parties interested in the corporation, among whom were the parties to this litigation, and were liable as individuals. It further appears that some of these individuals had denied their personal obligation on the ground that the plaintiff in error had not truly represented the assets of the corporation but had appropriated the same to his own use. The defendant in error was not one of these, but knew about this contention. The special defense to the note, filed by the defendant in error to the demand of the plaintiff in error, is to the effect that he executed this particular note at the suggestion and request of the plaintiff in error with the understanding that it should not be a binding obligation against him unless the plaintiff in error should recover judgment against these other parties, which it was alleged the plaintiff in error had failed to do, and that therefore, according to the agreement between the parties, he was not liable on the note. The answer, after pleading in detail the facts as claimed by the defendant in error, among other things, uses this language:

"That the note sued on having been executed to become due and payable and binding on this

defendant only upon the happening of a certain event which has never happened, and which cannot and will not happen, that the note sued on never became effective or binding, and was never delivered in contemplation of law."

After alleging the refusal of the other parties to the original obligation to pay their pro rata portions and their determination to resist any suit brought to enforce payment thereon, the answer proceeds in the following language:

"And thereupon plaintiff agreed with this defendant that, if this defendant would execute his note for defendant's proportionate part as aforesaid, the same would not be binding upon this defendant until such time as plaintiff had sued' on and recovered a judgment against said other parties signing said note, and that, if plaintiff failed to recover a judgment against said other parties signing said note with this defendant, said note sued on herein would not be binding, and would not be effective, and the same would thereupon be destroyed or returned to this defendant."

The answer then proceeds to allege that the plaintiff in error did not intend to prosecute said suit to judgment at the time he made the promise and thereby secured from the defendant in error the note sued on here, and that, by reason of said promise and agreement and the failure to comply therewith and the fraudulent intent with which the defendant's signature to said note was secured, the defendant is in no manner liable to the plaintiff. The trial court, after overruling special exceptions to this answer, permitted the defendant in error to introduce oral evidence in support of the allegations, and, after refusing to instruct the jury to render a verdict in favor of the plaintiff in error, submitted the following special issue, which the jury answered in the affirmative, to wit:

"At the time of the execution and delivery of the note. sued on herein by the defendant, Evans, to the plaintiff, Rector, was it the agreement of the said Evans and Rector that said note would not be paid and would not become a binding obligation on the defendant, Evans, until such time as the plaintiff, Rector, should procure judgments against Vaden, Ball, Rix, and others for the joint benefit of defendant, plaintiff, Miller, and Carter? Answer 'Yes' or 'No' just as you find."

The plaintiff in error objected to the submission of this issue, on the ground that the effect of it is to permit a contradiction and variance of the terms of the note sued upon by parol evidence, and because the uncontradicted evidence is to the effect that the note sued on was executed and delivered to the plaintiff to evidence an admittedly due and unpaid obligation of the defendant, and the same cannot be varied by parol evidence of an agreement not in writing that it should be paid only in the event plaintiff should procure judgment in his own and defendant's

behalf against other parties. This objection was overruled. The Court of Civil Appeals held that the special answer set up a complete defense to the note in question, and that the testimony offered in support of this defense was sufficient to sustain it and to justify the verdict of the jury. This situation under the assignments of error presents to this court purely a question of law.

[1] The first and second assignments of error in the petition for the writ of error challenge the correctness of the judgment of the Court of Civil Appeals in holding that the defense pleaded by the defendant in error in the court below was in the nature of a confession and avoidance, and in holding that the trial court did not err in refusing to give a peremptory instruction to the jury to return a verdict for the plaintiff in error on account of the fact that the defendant in error had admitted in writing and in due time plaintiff in error's cause of action in accordance with rule 31. This rule is stated in the following language:

"The plaintiff shall have the right to open and conclude, both in adducing his evidence and in the argument, unless the burden of proof of the whole case under the pleadings rests upon the defendant, or unless the defendant, or all of the defendants, if there should be more than one, shall, after the issues of fact are settled and before the trial commences, admit that the plaintiff has a good cause of action as set forth in the petition, except so far as it may be defeated, in whole or in part, by the facts of the answer constituting a good defense, which may be established on the trial, which admission shall be entered of record, when the defendant, or the defendants, if more than one, shall have the right to open and conclude in adducing the evidence and in the argument of the cause."

Had not this admission been filed, the plaintiff in error would have been compelled to have assumed the burden of proof and to have introduced the note upon which the suit was founded. Had this note been introduced in evidence, there would have been sufficient proof before the court to have authorized a judgment in favor of plaintiff in error that on July 1, 1917, the defendant in error made, executed and delivered to the plaintiff in error his promissory note in writing, bearing date on the year and day aforesaid, and thereby promised plaintiff in error to pay him or his order on November 15, 1917, the sum of $1,033.54, with interest thereon from date at the rate of 10 per cent. per annum, in Gordon, Palo Pinto county, with 10 per cent. upon the principal and interest as attorney's fees; that said note was long since past due and unpaid, though payment had been often demanded. All of these facts were admitted by the defendant in error by the filing of the admission heretofore mentioned. The first-amended original answer of the defendant in error, besides a general demurrer and general denial, contains the

following allegations, which were verified by the oath of the defendant in error:

"And further answering herein, if further answer be required of him, this defendant comes now and shows to the court that the alleged note herein sued was never delivered by this defendant to the plaintiff as a binding obligation, and that the same never took effect and is not now the obligation of this defendant, but was executed by this defendant, under an agreement with the plaintiff that said note was not to become a binding obligation or to have any effect as such and was not to be delivered or to become effective until plaintiff had recovered judgment in a court of competent jurisdiction against W. M. Ball, M. D. L. Pittman, Andy Vaden, W. H. Rix, and Will Carter on certain notes executed by said parties and this defendant and said plaintiff to Mrs. Eleza Hart, J. W. Rector, and First State Bank of Mingue in the approximate sum of $6,000. The exact amount of said note or notes is not known to the defendant and notice is hereby given to the plaintiff to produce said notes on the trial hereof or secondary evidence will be resorted to to prove their contents. Plaintiff represented to defendant that he (plaintiff) had paid said notes above referred to; that it was agreed by and between plaintiff and defendant, at the time the note sued was executed by the defendant, that the plaintiff would sue on said note or notes signed by W. M. Ball and others as aforesaid, and that, when the plaintiff recovered judgment against said Ball and the other parties hereinbefore named, the note sued would then and not until then become a binding obligation, and that, if the said plaintiff should fail to recover judgment against said Ball and other parties hereinabove named, then said note sued on would be of no force or effect and should be canceled and destroyed. Defendant would further show that the plaintiff did institute suit against said Ball and the other parties hereinabove named on said note or notes claimed to be held by the plaintiff, and which plaintiff claimed he had paid and that said suits were styled J. S. Rector (No. 4701) v. W. H. Rix et al. and J. S. Rector (No. 4702) v. W. M. Ball et al., on the docket of this court, and that on the 14th day of October, 1921, said suits were each and both dismissed for want of prosecution and dismissed from the docket of said court, and that said notes have long since become barred by the court [four] year's statute of limitations and that therefore the note sued on, having been executed to become due and payable and binding on this defendant only upon the happening of a certain event, which has never happened, and which cannot and will not happen, the note sued on never became effective or binding, and was never delivered in contemplation of law, and this defendant is not liable thereon, and of this he puts himself upon the country.

"And further answering herein, if further answer be required of him, this defendant would further show to the court that the alleged note sued on by the plaintiff was procured from this defendant by the plaintiff by false and fraudulent representations in this: That the said W. M. Ball, M. D. L. Pittman, Andy Vaden, W. H. Rix, Will Carter, and this defendant were associated with the plaintiff in a certain enterprise known as the Gordon Gin & Milling Company, of which enterprise plaintiff has the sole management and control, and was being operated by the plaintiff and under the plaintiff's sole management and control, and that during said time this defendant was out of the state and resided about two years in the state of Florida, and that upon this defendant's return the plaintiff represented to this defendant and said other parties named that the plaintiff had paid out in the operation of said enterprise approximately $6,000, and, by means of said representation, induced this defendant to sign the notes to the plaintiff sued on said notes, which plaintiff claimed to have paid off, now being in the possession of the plaintiff, and the exact amount and date thereof are unknown to this defendant, but are well known to the plaintiff, and are the same notes sued upon by the plaintiff in said causes styled J. S. Rector v. W. H. Rix and J. S. Rector v. W. M. Ball et al., hereinabove referred to; that after the execution of said notes to the plaintiff by said Ball, this defendant and said other parties, and during this defendant's absence from the state as aforesaid, said Ball and Rix, Pittman, and Carter claimed that said plaintiff had not paid out said sum for which said notes were given and also claimed that the plaintiff had received certain revenues from the operation of said enterprise, and it failed to give proper credit therefor, and said parties thereupon announced their determination not to pay said note and to resist any suit brought by the plaintiff, thereon, and thereupon plaintiff agreed with this defendant that, if this defendant would execute his note for defendant's proportionate part as aforesaid, the same would not be binding upon this defendant until such time as plaintiff had sued on and recovered a judgment against said other parties signing said note, and that, if plaintiff failed to recover a judgment against said other parties signing said note with this defendant, said note sued on herein would not be binding, and would not be effective, and the same would thereupon be destroyed or returned to this defendant; that this defendant, being out of the state and having no knowledge of the true state of affairs concerning the plaintiff's operation of said enterprise, and relying upon plaintiff's said representation that he would sue upon said notes as against said other parties thereto and recover judgment thereon, executed the note sued on, but this defendant says that plaintiff did not intend to prosecute said suit against said other parties, and well knew at said time that he could not recover against said Ball and others on said note, and wholly failed to prosecute his said suit, and the same was dismissed for want of prosecution as hereinabove alleged, and that the plaintiff well knew that said Ball and others having possessed the information which would defeat the said causes sued on in cause No. 4701 and 4702, but made said representations solely for the purpose of securing this defendant's signature to the note sued on herein, and without any intention of carrying out his said promises and agreement by which he secured the signature of this plaintiff to the note sued on herein, and that the plaintiff did not comply with his said promises and agreement by which he secured the signature of this defendant to the note herein sued on, and that, by reason of said promises and agreement and the defendant's failure to comply therewith and

his fraudulent intent with which he acquired the defendant's signature to said note herein sued on, this defendant is in no manner liable to the plaintiff, and of this he puts himself upon the country."

The note which was in fact introduced in evidence is as follows:

"$1,033.54.　　　　　　　　　　　July 1, 1917.

"Nov. 15, 1917, after date for value received I promise to pay to J. S. Rector, or order, one thousand thirty three & 54/100 dollars, at Gordon, Texas. To bear interest at the rate of 10 per cent. per annum from date. And hereby agree that if this notice is not paid when due all costs necessary for collection including ten per cent. attorney's fees.

"[Signed] M. C. Evans."

Defendant in error testified as follows:

"My name is M. C. Evans, I am the defendant in this case, I live in Erath county, in the Sap Oak community. Gordon mostly is my trading point, and I trade some at Stephenville. I live 12½ miles from Gordon, southeast. I have lived down there in that community about 28 years, except 2 years I was in Florida. I am farming and trying to sell a few goods.

"I am acquainted with Mr. Rector, I have known him about 15 or 20 years, maybe longer. To some extent I was associated with him in an enterprise that he ran down at Gordon. We were associated together in what was known as the Gordon Gin & Mill Company. It was a cotton gin and a grist mill. Mr. Rector had charge of it. Me and him became interested at about the same time, but then he wasn't the leader in the matter. I don't remember the year that he became to be the leader.

"The two years that I was in Florida was 1914 and 1915. I went there in the fall of 1913, and I stayed over one year and up to July in 1915. The gin and mill was being operated both of those years by the plaintiff. He was the general manager and controller of the company. While I was gone I did not know anything about the operation of the company. After I returned I was told about something that came up about the operation of that mill and gin. Mr. Rector did not tell me, but he was in the crowd that talked the matter over; there was several of the directors there that met with him.

"On one certain occasion the directors were sort of probing about the condition of the books. They didn't show what became of a good deal of the money made by the company, and they didn't show up anything, and he got a little hot, and said, 'I want you fellows to understand that I am going to take care of myself and my people.'

"In settlement of some obligations of the concern, I signed a note. I signed all of the notes prior to that time. Joe Rector was on the notes and W. M. Ball, Mr. Rix, Mr. Carter, and Mr. Miller, and also Mr. Pittman. One of the notes that we signed was payable to the Mingus Bank, and the balance was to Mrs. Hart. Mrs. Hart was a sister to Mr. Rector. There was a note also payable to J. W. Rector, his father. After these notes were executed Mr. Rector continued to run the gin and mill. He got the revenues, and collected the tolls and fees for ginning and milling.

"At the time I signed that note (indicating) the gin had done went to the bad, and he was talking of suing the parties that went on these notes; they were on these notes as security, and he said he was going to sue them. I talked with him, and I told him that I never was a man to get into lawsuits and didn't want to become known in a lawsuit, and I told him, we talked the matter over and we finally came to the conclusion that he would proceed and sue the other parties but not sue me, and I take no part in the matter either for or against him, and I would execute my note as a kind of a surety if he went ahead and sued on the notes and got a judgment, that I would pay this note off when he got a judgment against the others. If he failed to get a judgment against the other parties, this note was to become null and void, and he promised me that he would sue on this note in the following court. That was taken from the other notes which he said was my pro rata share of the other notes, and I gave him this note as a kind of security or guaranty that I would pay this amount that this note called for when he got judgment against these other notes. The date of this is July 1, 1917, and is due November 15, 1917. He made it due that way, and whenever he got a judgment against these other notes then I was to pay that note off, and I urged him to go ahead, as I told him I couldn't pay interest on the note, and for him not to let it drag in the courts but proceed and have it tried in the courts right at once, and he promised me it would be tried in the next court.

"After that he never said anything more to me about that note until about 6 months prior to that note being out of date, he came to me one day and says, 'I want you to give me a new note; this other one is going to run out of date,' and I said, 'You never have carried out our agreement; you have never got a judgment and I don't feel like I am under any obligations to give you a new note; you have had this in court for 4 years, and it has never been tried, and I don't feel like I am due you a note.' That was 4, 5, or 6 months before this note ran out of date, that would have been some time in 1921. He never asked me to collect that note, but he wanted me to give a new one. And then he came down to where I live and wanted a new note, and I refused and he came again, and I refused again. There wasn't any one present except at the last time he came down to the store, Mr. Quarles was there. Me and Joe always done our business privately. As Joe walked in off of the gallery I said, 'Are you here on the same errand, expecting me to give you a new note?' and he said, 'Yes;' and I told him I wouldn't give him a new note on that proposition because he had failed to carry out our private agreement, and I wouldn't give him a new note. He didn't say a word about it, then he just set there on the counter a minute and got up and went back to his car.

"I was a stockholder in the gin company. I was a member of the board of directors at one time, but I resigned when I went off to Florida. When I came back I was not re-elected. I ginned all of my cotton there.

"These notes that were executed to the First State Bank of Mingus and to Mrs. Hart and Mr. Rector were for borrowed money, and it was so understood by everybody at the time. I couldn't say how many of those notes were there. There was a note also payable to the

First National Bank of Gordon. There were five or six notes outstanding on behalf of the gin company for borrowed money. I couldn't answer how many notes I signed, because I don't know. I had signed more than one note, but I don't know how many. All of these notes were signed by the gin company by Mr. Rector as manager, and then by various individuals who were interested in the company, as sureties for the company. We signed on the face of the notes; we didn't sign on the back of them. So far as the notes were concerned, I suppose we were all joint makers of the notes, but when I signed up those notes it was nothing only surety. The gin company was a corporation at that time. I suppose in every single instance these notes that were executed were signed by some of us who were interested in the company. I don't remember how many notes I signed.

"I couldn't swear that I knew that he paid those notes and gave his obligation for what he didn't pay on account of the various parties threatening suit. I don't think this matter between myself and Mr. Rector came up after the gin proposition had blown up. I had lots of confidence in him, and I just taken his word for the amount; he brought that to me and said that was my pro rata share. I recognized my liability on the old notes at that time. All I want him to do is to do what he agreed with me to do.

"Some of the signers to these notes were solvent and some were not. I couldn't say whether some of the signers of these various notes were insolvent or not. He and I might have talked something about that, I couldn't say. I couldn't say when the first conversation occurred between he and I about me giving this note. I might have talked to him about it in Gordon, but I don't remember the occasion, we just talked the matter over as friends. I was down in one of my fields when I signed it. I told him that I would give him a note for my pro rata share with the understanding. That understanding which I agreed to give the note was in Gordon. There was nobody present except he and I, I never talked to Mr. Rector in the presence of his attorney that I remember of. I never talked to Mr. Rector and you (Judge Ritchie) down in Gordon that I remember or any other attorney. I know Mr. Miller. Me and Mr. Miller agreed that we would take up a certain note at Mingus and pay our part. I don't know when Mr. Lassiter took care of his part of one of the notes; I believe he was on the note.

"Mr. Rector told me that it might be that he couldn't collect all of these notes, but the understanding was that he would sue on these notes and get a judgment, and I was to pay $1,000 as my part and be free from the rest of the indebtedness on the rest of these notes. If he brought suit on a note and didn't collect anything, that was his business. I would pay mine if he got a judgment; there wasn't anything said about whether he collected it or not, but he was just to get a judgment. Every time I would see him I would say, 'Joe why didn't you put that thing through?' and he would let it go on just sinking me for interest on that note. He didn't tell me Mr. Rix, the only solvent man among them, was dead. I don't have any memory of discussing with him that he was the only solvent man among them.

"If I signed those notes aggregating approximately $6,000, I certainly recognized that I was liable for the whole $6,000. Besides myself and Mr. Rector, the other signers were W. M. Ball, Mr. Vaden, Mr. Rix, Mr. Carter and Mr. Miller; that is all as far as I can recollect.

"I did not sign all of the notes that were outstanding; there was some of the notes that I never did sign; there was a lot of notes that I never signed. Mr. Miller wasn't mixed up only on the Mingus note, and me and him agreed to pay every man's pro rata on that note there ourselves and take it up. Mr. Rector taken it up and bought the note on that occasion. W. R. Miller and M. C. Evans, were the signers on that note at Mingus; me and Mr. Miller paid that note to Rector. That was the note I gave to cover my pro rata liability on that note. Rector took up that Mingus note, and me and Miller made a note to him for our pro rata part and afterwards paid it. He told us that we could pay their pro rata part, and that was to be returned to us when he got a judgment. Rector brought the two notes. Mr. Miller had done signed the note, and I signed them both at the same time, but one was to be paid at a time; but this other note we had a special understanding that it wasn't to be paid until he got a judgment.

"I don't remember the time myself, and Miller and Rector and yourself (Judge Ritchie) all had a conference down at Gordon about those troubles. I never conferred with Rector along with Miller about the matter that I remember of. Rector never told me he wanted me to give him a new note when I told him I didn't have the money; he just asked me to renew the note. The first time it was mentioned was along in the summer in Gordon. Mr. Rector came across the railroad in his car, and he spoke to me, and I approached him and talked to him about it; that was the first time it had ever been mentioned. He said he would like for me to renew the note, as it was going to run out of date. I don't know whether that was the first thing he said about it or not. He didn't say, 'What about that note?' but we stopped and talked. He wanted me to renew the note. When he said something about it, we had not been talking about it. We had never had no conversation about that note; it never had been mentioned up to then.

"I had paid some on the note to the bank. This is the note to the Mingus bank for $1,298.80, dated April 20, 1915, and due April 10th the same year and signed by Carter, Rector, and others; there is some payments on the back of the note: Rector, $270.03. That is the note that I gave the new note for for the balance due. This (indicating) is due July 1, 1917. Miller's part was $330.50. That was no part of the note sued on; that is what I agreed to pay. We agreed to pay that note off so we would be loose from all the business. There wasn't no other note. There was a note at the bank of Gordon but we paid that off, I paid some of it; W. R. Miller and myself was on that note at Mingus. The bank at Gordon's note was paid off prior to that, and I paid my part of that. I do not remember how much I paid or how much that note was for.

"I understood that Mr. Rix and Mr. Ball and the others were contesting their liability on these notes, claiming that they didn't owe Mr.

Rector. I don't know that I ever discussed with Mr. Rector about what those parties were saying about their liability. They in directors' meetings complained about the way the business had been managed and about this management of the business. Mr. Rector never discussed with me as to whether these other people were going to fight their indebtedness. He did not discuss with me whether it would be necessary to sue them; he just told me he was going to sue them; he just told me he was going to sue the whole business.

"I couldn't tell you what the total was that I paid on the note at Mingus dated April 20, 1915, for $1,298; I don't remember. You will have to ask Mr. Rector whether he paid the bank at Mingus; he brought that to me as my pro rata, and I suppose included in that was Mr. Ball's part. I suppose that Mr. Rector didn't pay but his pro rata. Mr. Miller had agreed with Mr. Rector to take up the balance of that note, and I told him I would do the same, and when he brought it to me I just signed it with Mr. Miller, and we agreed to pay it. Me and Mr. Miller paid that note off, no one else. I paid it by giving Rector this note for my part and later paid the note. Mr. Rector claimed that to be what we were due on that note."

There was one other witness by the name of Quarles, who testified that he heard the defendant in error state to the plaintiff in error on one occasion, in answer to a statement made by the plaintiff in error that he came down to see him about that note, to renew that note, to the effect, "That is not according to our contract." There was also proof that certain suits were instituted by the plaintiff in error against certain parties named in the answer of defendant in error on certain notes.

While we have found some difficulty in reaching a conclusion as to whether the assignments of plaintiff in error should be sustained, especially in view of the provisions of section 16 of article 5932, R. C. S. 1925, providing that every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto, and that the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting, or indorsing the note, as the case may be, in which case the delivery may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring the property in the instrument, yet we have finally concluded that this provision of the statute is not applicable to the facts of this case and that the assignments of the plaintiff in error should be sustained. If we are correct in this conclusion, then the action of the trial court in permitting the defendant in error to open and conclude the argument becomes immaterial, for the reason that there would be nothing about which to talk; no issue having been made by the pleadings and the testimony which it was necessary for the jury to decide.

[2, 3] It is a well-known principle of law that a written instrument, executed and delivered without the intervention of any fraud, accident, or mistake in the making and delivering of it, proves itself, and its terms cannot be contradicted by oral evidence. We have been particular in setting out the pleading of the defendant in error, as well as his testimony introduced in support thereof, in order that this opinion may demonstrate the exact state of the record upon this question. It is true that there is a statement in the answer of the defendant in error to the effect that the plaintiff in error knew that he could not recover against Ball and others on the note mentioned, inasmuch as he knew that Ball and others had in their possession information which would defeat the causes sued on in the suit afterwards brought and dismissed, and that the representations to bring the suit and recover judgment before demanding payment of the note executed and delivered by defendant in error was for the purpose of securing his signature without any intention on the part of plaintiff in error of carrying out his promises and agreement, but these statements are mere conclusions of the pleader, and in addition thereto they are not supported by any testimony. So the issue of fraud is not presented by the record, and the sole question of law is whether the material allegations in the petition of the plaintiff in error, admitted by the defendant in error to be true, can, under the pleadings of the defendant in error and under his testimony given in support of those pleadings, be held to have been overturned thereby.

In the case of Dashiel v. Lott et al. (Tex. Com. App.) 243 S. W. 1072, Mrs. Dashiel sued J. N. Lott and others on vendor's lien notes and sought to foreclose a lien on a certain tract of land. Defendant's answer contained, among other things, what was purported to be his plea in confession and avoidance. Upon the trial, Lott admitted the plaintiff's cause of action except so far as it might be defeated by his pleadings and evidence; the jury found against him on his plea in avoidance; and the court rendered judgment in favor of the plaintiff. The Court of Civil Appeals reversed the judgment of the trial court, because some of the plaintiff's testimony failed to support her pleadings. Section A of the Commission of Appeals reversed the decision of the Court of Civil Appeals and affirmed the judgment below. In the course of the opinion, Justice Gallagher says:

"We think the Court of Civil Appeals erred in so holding. Such holding fails to give full force and effect to the admission which defendant in error made in open court, as a part of the record in this case. The effect of that admission was to operate as an abandonment of all his defensive pleadings as contradistinguished from those in confession and avoidance and to admit every fact which it was necessary for Mrs. Dashiel to establish in the first instance to enable her to recover. Smith

v. Traders' National Bank, 74 Tex. 541, 545, 12 S. W. 221. The contemplation of the rule is that, when a proper admission is made, if neither party introduces any evidence, the plaintiff must recover to the extent of the claim made by his pleadings. Sanders v. Bridges, 67 Tex. 93, 96, 2 S. W. 663. The admission entitled plaintiff in error to recover judgment for her debt and foreclosure of lien, unless such recovery was defeated by something outside of and beyond the matters set up in her petition."

In Ferguson-McKinney Dry Goods Co. v. City National Bank of Colorado, Tex., Garnishee, 31 Tex. Civ. App. 238, 71 S. W. 604, the dry goods company, who was a judgment creditor of one E. E. See, sought to hold certain moneys on deposit in garnishee bank alleged by the plaintiffs to be the property of See. The bank filed an admission of plaintiff's cause of action in accordance with court rule 31, and judgment was rendered in favor of the defendant. In reversing this decision the Court of Civil Appeals, speaking through Judge Speer, said:

"The first assignment of error complains of the action of the court in the following particular: After the filing of appellee's admission as above noticed, the appellant asked the court, in writing, to instruct the jury to return a verdict in its favor. This the court declined to do, and, as we think, committed error thereby. The rule allowing the defendant the right to open and conclude the argument upon a trial of a cause by filing an admission such as the one filed by appellee in the county court confers a most valuable advantage, and is to be attended by corresponding concessions to the opposite party. Before being entitled to 'its benefits, the defendant must admit that the plaintiff has a good' cause of action as set out in his pleadings, except so far as it may be defeated, in whole or in part, by the facts of the answer constituting a good defense, which may be established on the trial. This admission must be held to mean something. It cannot be said to simply cast upon the defendant the burden of disproving plaintiff's allegations, for their truth has been admitted, and cannot be disputed upon the trial. Plaintiff is himself relieved of the duty of offering proof to support them. Every fact necessary to establish the cause of action as set forth in the plaintiff's pleading is admitted, and defendant can prevail only upon pleading and proving such facts as will entitle him to a judgment notwithstanding the truthfulness of the plaintiff's pleadings. The defense must be in the nature of a plea in confession and avoidance."

In Smith v. Frost, 254 S. W. 926, section A of the Commission of Appeals, in an opinion adopted by the Supreme Court, said:

"The admission under this rule admits every fact alleged in the plaintiff's petition, the proof of which is necessary to their recovering in the first instance, and is an abandonment of all defensive matter set up in defend-

ant's answer, except that in the nature of confession and avoidance. Smith v. Traders' Nat. Bank, 74 Tex. 541, 12 S. W. 221, and Dashiel v. Lott (Tex. Com. App.) 243 S. W. 1072."

The facts in the case of Smith v. Frost, briefly stated, were that several creditors of certain parties sued out writs of execution and attachment and seized an automobile as the property of one of the debtors. This automobile so seized was claimed by Frost, and it was properly delivered to him by the sheriff, he having filed his oath and bond as the law in such cases prescribes; issue having been joined between these original creditors and Frost, in which the creditors alleged that the automobile was not the property of Frost but was the property of one of the original debtors and was subject to foreclosure and sale and was of the value of $2,500. Frost answered by general denial, and specifically that, at the time of the levy, he was the owner of and in possession of the automobile, and that the same was not subject to either execution or attachment for any debt due by any one of the original debtors, who were alleged to be his employees and agents to whom he had furnished the car to enable them to better fulfill their duties to him, and that they had no title, claim, or interest in it in their own right. Before the trial began, however, Frost filed an admission of plaintiff's cause of action in due form, which was duly entered of record, and he was given the right to open and conclude in introducing the evidence. The Commission of Appeals in that case further said:

"In this case the plaintiffs in error in their petitions alleged that, at the time of the levy of the writs of execution and attachment, Boggs Bros., defendants in execution and attachment, were the owners of the automobile, and in possession thereof, and that defendant in error Frost did not own and had no title to same, and that said car was of the value of $2,500. These facts were conclusively admitted by defendant in error; and the trial court, under the admission, could not do otherwise than instruct a verdict for plaintiffs in error. It is evident that, in making the admission, counsel did not intend to admit that defendant in error did not own the automobile, and that he was mistaken as to the effect of same."

The Court of Civil Appeals in that case having reversed the judgment of the trial court, the Commission of Appeals proceeded to recommend that the judgment of the Court of Civil Appeals be reversed and that of the district court affirmed, which recommendation was accepted, and the judgment of the Commission of Appeals adopted by the Supreme Court.

[4] An inspection of the answer of the defendant in error, and of his testimony given in support of its allegations, both of which

are copied in this opinion, shows that the agreement of the parties to the promissory note, which was executed and delivered by defendant in error to plaintiff in error, did not in fact relate to its delivery but rather to its payment or nonpayment according to the happening of the contingency mentioned in the pleadings and in the testimony of the defendant in error. Under the terms of the agreement, if Rector should recover a judgment against Ball and others, then the promissory note so executed and delivered by Evans to Rector was to become a binding obligation upon Evans, but, if no such judgment was recovered after a trial of the case upon its merits, and Rector should fail to get a judgment, then this promissory note was not to become a binding obligation. It will thus be seen that the agreement did not relate to the delivery of the note but rather to its payment or nonpayment. Such being the state of the record, the oral testimony which was intended to nullify the obligation evidenced by the promissory note, and which was permitted by the trial court and approved by the Court of Civil Appeals, was in direct violation of the legal rule that, in the absence of fraud, accident, or mistake, oral testimony is not admissible to contradict the terms of a written instrument. When the promissory note of the defendant in error was introduced in evidence, in the absence of legal testimony under proper pleadings avoiding its execution and delivery on account of some fraud, or some accident, or some mistake, of the parties, the cause of action pleaded by the plaintiff in error was established, and as we have seen that there was neither pleading nor testimony by the defendant in error which was sufficient to raise any issue of fact, we think error was committed both by the trial court and by the Court of Civil Appeals, and that the plaintiff in error was entitled to an instructed verdict at the hands of the court to the jury impaneled to try the case.

The disposition we have made of the first and second assignments of error renders unnecessary a further discussion of the other assignments of error, and we therefore recommend that the judgments of the Court of Civil Appeals and of the District Court be reversed and that judgment be rendered in favor of plaintiff in error for the amount of the note sued on, with interest and attorney's fees, and that the plaintiff in error recover of the defendant in error at all costs incurred in his behalf in the district court, in the Court of Civil Appeals, and in the Supreme Court.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.