No error appearing the judgment will be affirmed.

HAWKINS, J., absent.

On Motion for Rehearing and Application for Certiorari.

HAWKINS, J. Appellant brings before us in a verified motion two bills of exception which were omitted from the transcript originally and asks for a writ of certiorari to have the transcript corrected to embrace said bills. The clerk certifies that they were filed among the papers in the cause, but nothing appears in the certificate nor in the application for certiorari advising us that they were filed within the time required by statute. However, waiving this irregularity, we have considered the bills as though they were properly before us. One of them shows that a witness testified that he had seen on "appellant's car at the city hall in Cisco" a motor meter identified as part of the stolen property. It was later developed that this witness only knew from hearsay that the car belonged to appellant. The court declined to withdraw that part of witness' testimony which seemed to be hearsay. In this respect we think the action of the trial court was erroneous, but it does not call for a reversal because it was shown by other undisputed evidence that the car did in fact belong to appellant.

The other bill presents no error. It brings forward a complaint that the sheriff testified to the effect that he took appellant's car to the police station in Cisco; objection thereto being that appellant was not present when this was done. The motor meter and other stolen property was on this car. It was necessary and allowable to show the movements of the car in order to trace the stolen property and identify it. Busby v. State, 106 Tex. Cr. R. 293, 292 S. W. 234.

The motion for rehearing and application for certiorari are overruled.

## HELMKE v. PRASIFKA. (No. 8107.)

Court of Civil Appeals of Texas. San Antonio. Jan. 9, 1929.

Appellant's Rehearing Granted Feb. 13, 1929.
Appellee's Rehearing Granted April 10, 1929.
Further Rehearing Denied May 22, 1929.

464

J. B. Dibrell and Stevenson & Knetsch, all of Seguin, for appellant.

H. J. Passmore, of Robstown, and R. A. Weinert and A. J. Wirtz, both of Seguin, for appellee.

COBBS, J. Appellee sued appellant to recover upon a promissory note executed by appellant for the sum of $2,100, interest and attorneys' fees. Appellant admitted the execution of the note, but resisted payment on the ground of the failure of consideration. He also defended upon the ground that the note was never delivered absolutely, but with the understanding and agreement by appellee that he would not collect, or attempt to collect, said note unless a certain $6,000 note that had been executed to appellant by one John Broeg and Hugo Kolterman was paid when due; that said note of $6,000 was never paid by the makers thereof, and hence the consideration failed.

Upon a hearing of the facts, the court instructed the jury to return a verdict for appellee, which was accordingly done, and a judgment was rendered against appellant for appellee. The facts are substantially as stated by the witness Albert Arend, who resides at Seguin, and who was engaged in the farm loan business, as follows:

"That he (the witness) was acquainted with the appellant and appellee. That he understood appellee was engaged by appellant to negotiate a sale of the land in question, appellee being in the real estate business and residing at Robstown, in Nueces county. That the witness was present when Helmke executed a note to appellee, Prasifka, for $2,-100.00, the note being written by witness for appellant and appellee. In other words, he was acting as secretary to each of the parties. The note for $2,100.00 to become due at the same date the $6,000.00 note in question was to mature. The deed to Broeg and Koltermann was delivered in the office of the witness Arend. That appellee, the agent of appellant, was paid the aggregate sum of $1,-000.00 and the note for $2,100.00 was executed. That appellee admitted in the presence of witness that the note for $2,100.00 was not collectible unless Broeg and Koltermann paid the $6,000.00 note. Prasifka, appellee, said: 'I admit that you don't owe me the whole commission at the present time and not until that $6,000.00 note is paid on the first of November.'

"The note for $6,000.00 was payable November 1st, 1925, at the same time the $2,100.00 note was made payable. Mr. Helmke stated to appellee, Prasifka, when he delivered the note for $2,100.00 to him, that he would pay that note the moment that Broeg and Koltermann would pay the $6,000.00 note. That was the condition that that note was given under. When the note was delivered Mr. Helmke said: 'The moment Broeg and Koltermann pay me that $6,000.00 note, then I will pay this $2,100 note,' and Prasifka admitted this was acceptable. He said 'That is all right.' Appellee, Prasifka, further said: 'Of course, if they (Broeg and Koltermann) don't pay that note (the $6,000.00 note), you don't have to pay the $2,100.00 note.' That was the condition the note was delivered on. If the $6,000.00 note was not paid by them, then this note was not payable."

Broeg and Koltermann never paid the note, and the land was reconveyed to appellant.

There is no necessity for discussing the facts in detail. The real question upon which the defense is made and the basis of this suit is that there was no delivery of the note with the intent of making it a binding contractual obligation, except in the event of the payment of the $6,000 note executed by Broeg and Koltermann, which never occurred.

There was no written stipulation that there was any condition that the payment of the note for the commission was dependent upon the payment of the $6,000 note; in other words, the note was assignable, and a purchaser would take it in all innocence. The agreement was wholly in parol. We do not think under the facts of this case that it was delivered in such manner as not to become binding and effective. We think it was delivered in a manner in which it became binding and effective and not affected by the provisions of article 5932, § 16, R. S. 1925. As a matter of fact, it was delivered under the terms of an agreement as would have made the note payable or defeated its payment on a contingency which might thereafter happen. In the case of Rector v. Evans (Tex. Com. App.) 288 S. W. 826, it was alleged that, when the note therein sued on was executed and delivered, it was agreed that the same would not be binding upon the maker until such time as the payee had sued upon and recovered a judgment against other parties signing said note. Judge Short, of the Commission of Appeals, in discussing this statute, held it inapplicable, and "that the agreement did not relate to the delivery of the note but rather to its payment or nonpayment." He further held that the contract "was in direct violation of the legal rule that, in the absence of fraud, accident, or mistake, oral testimony is not admissible to contradict

the terms of a written instrument." In the case of Chalk v. Daggett (Tex. Com. App.) 257 S. W. 228, the maker of the note pleaded at the time each of the notes were given the payee entered into a parol contract whereby certain previous partnership affairs between them were to be settled by an accounting, the amounts found to be due the maker to be credited on the notes, and the notes were not to be collected until the accounting was had. Such an agreement was upheld. See, also, Key v. Hickman (Tex. Civ. App.) 149 S. W. 275.

The evidence shows that appellee had effected a sale of appellant's property and had earned his commission, so that the agreement in evidence, pleaded by appellant, had no relation either to the delivery or the consideration of the note. It was verbal, and simply covered a contingency, the happening or non-happening of which might affect the payment of the note. There was no ambiguity in the note, it was in the usual form and negotiable, but, if the agreement would result in defeating the note, then such agreement would have the effect of varying the terms of the written instrument by parol.

It is apparent from the facts in this case that appellee negotiated a sale of all this property to Broeg and Koltermann; he then earned the commission which appellant agreed to pay him, and there was no consideration for Prasifka agreeing to accept a note in lieu of his commission, especially conditioned on the payment of the $6,000 note given by Broeg and Koltermann. This $6,000 note was not paid by Broeg and Koltermann, but the property was reconveyed to appellant, and he assumed the payment of the note, and now owes the same.

We think this case has been fairly tried, without error, and that justice was administered.

The judgment is affirmed.

### On Appellee's Motion for Rehearing.

PER CURIAM. Helmke listed his land with Prasifka, for sale upon certain terms, including a down payment of $10,000 in cash. Prasifka procured a purchaser willing to pay Helmke's price, but could pay only $4,000 cash, instead of $10,000. Helmke negotiated directly with the prospect, and agreed to make the sale upon the $4,000 down payment, the balance of the $10,000 cash payment ($6,-000), to be evidenced by a note due November 1, thereafter. The sale was made on these terms.

There was no controversy about Prasifka's commission, nor the amount of it. He had procured the sale, upon terms concededly satisfactory to Helmke, the owner, and it is conceded that he earned the commission in full. But, because the cash payment originally fixed was reduced from $10,000 to $4,000, Helmke induced Prasifka to accept only a

part of his commission in cash, which was then paid, and the balance in a $2,100 note, payable at the same time the $6,000 note was payable. Prasifka agreed to this, with a further parol understanding that Helmke need not pay the $2,100 note until the $6,000 purchase price note was paid. There was no agreement that the commission note would in any event become a nullity or be surrendered to the maker or destroyed. Nor was it contemplated that appellant could defeat the note by rescinding the land trade. The question of rescission of the trade and cancellation of the commission note was not discussed or thought of by the parties.

The vendee did not pay the $6,000 note when due. In this situation Helmke's remedy was to rescind the sale, or foreclose. He pursued neither remedy. On the contrary, he sold and transferred to a third party, without recourse, the $6,000 note, and received and appropriated the full face value thereof, in cash, thereby placing the note beyond his control and rendering it impossible for him to again collect or receive payment of it. He had realized upon the note as completely as if it had been fully paid at maturity by the maker. Clearly, by this course Helmke had fully matured Prasifka's $2,100 note, and his obligation to pay that note was thereby so completely established that nothing he could do thereafter would impair or otherwise affect it.

■ Of course, there is a distinction between a parol condition affecting the delivery of a written obligation and one affecting its payment. This distinction is not always clearly apparent from the provisions of the condition. But, when the distinction is ascertainable, and is determined, the rules concerning its enforceability thus ascertained are clearly distinguishable. For a parol condition affecting the delivery of a written obligation is enforceable by virtue of our Negotiable Instruments Act (section 16, art. 5932), whereas a parol condition affecting the payment of a delivered written instrument is not enforceable if it operates to add to, take from, or vary, the terms of the written agreement. The latter rule is not affected by the statute, and is universally enforced. Chalk v. Daggett (Tex. Com. App.) 257 S. W. 228; Adams v. Johnson (Tex. Com. App.) 298 S. W. 265; Waters v. Byers Bros. & Co. (Tex. Civ. App.) 233 S. W. 572; Adams Nat. Bank v. Stone (Tex. Civ. App.) 284 S. W. 989; Crooker v. National Phonograph Co. (Tex. Civ. App.) 135 S. W. 647; Whiteman v. Bishop (Tex. Civ. App.) 289 S. W. 730.

■ The parol agreement sought to be enforced here clearly relates solely to the matter of the payment, and not to the delivery, of the note in question. The note was given in part payment of the broker's commission upon the sale of land. It is conceded by all parties that the sale was fully consummated, and that the broker's commission was fully

earned and had fully accrued. The defense of failure of consideration is not presented, and is not in the case. The agreement, which was made after the sale had been fully consummated upon terms agreed upon between vendor and vendee, was not that the amount of the broker's commission should in any event be reduced, but that the payment of that part of the commission evidenced by the $2,100 note should be postponed until the happening of a future event, to wit, the payment of that specific part of the purchase price of the land evidenced by the vendee's $6,000 note in favor of the vendor; that the $2,100 commission note should not mature until the $6,000 purchase price note was paid. This parol agreement, if enforced, would operate to vary the written provision of the note that it should be paid on a particular date, to wit, November 1, after its date. It is obvious, then, that the parol agreement related wholly to the *payment* of the written obligation, and not to its delivery, which was unconditional. It is equally obvious that the parol agreement varied, and, if given the effect sought to be enforced here, destroyed the absolute provision in the writing that it should be paid on a specified date. By this process the transaction is taken out of the statute relating to conditional deliveries, and brought within the rule against the nullification of written obligations by the use of parol agreements.

The case of Rector v. Evans (Tex. Com. App.) 6 S.W.(2d) 105; Id. (Tex. Com. App.) 288 S. W. 826; Id. (Tex. Civ. App.) 278 S. W. 924, cited in this case, is not in point. In that case Evans and others were jointly bound upon a doubtful obligation to Rector, who threatened to sue all of those debtors, including Evans, whose proportionate liability amounted to $1,033. In order to avoid litigation, Evans executed and delivered his note to Rector for that amount, under a parol agreement that Rector would sue Evans' co-obligors to recover of them upon said obligation, but that, if he failed to establish their liability and recover judgment against them, then Evans' note would be "*destroyed or returned*" to Evans. The Commission of Appeals held that these facts constituted the delivery of the note a delivery for a special purpose only, as contemplated in section 16, art. 5932, and that, when Rector failed in his suit against Evans' co-obligors, the special purpose of the delivery failed, requiring the surrender of the note to the maker. It was said in the controlling conclusion of the final opinion in that case: "Evans' pleading includes charges of an agreement that the note would be destroyed or returned to him if it turned out that Rector should not be able to get a judgment on the other claims and that he failed to get that judgment. If those charges be true, there was, we think, delivery 'for a special purpose only;' i. e., for holding by Rector to abide results in the other cases, with surrender or destruction of the 'note'

(paper as well as obligation) if he lost in those cases."

There are obvious and vital distinctions between that case and this one. There the whole consideration for the note was the proposed recovery of a judgment by the payee; here, the note was executed and delivered in settlement of a broker's commission already fully earned. There the note was delivered upon condition that, if the special purpose for which it was delivered failed, it (the instrument itself) would be destroyed, or returned to the maker, as if it had never been delivered for any purpose; here the note was delivered unconditionally, but with an understanding that its payment be postponed upon the happening of a named contingency. There was no agreement that its delivery could be recalled or that it would ever cease to be binding in its effect or destroyed, or surrendered to the maker for cancellation. The parol agreement related solely to the time of the maturity of the note, whereas in the Rector-Evans Case delivery of the note was not to be completed until the happening of the contingency agreed upon.

In the case of Fulwiler Electric Co. v. Smith (Tex. Civ. App.) 250 S. W. 725, also cited, the holding relied upon does not apply in the present case. For in that case the notes were delivered subject to the approval of title to property for part of the purchase price of which the notes were given. The title was not approved, the contemplated trade failed, and the delivery of the notes was held to be upon a condition which failed.

But, even if it be conceded that the parol condition related to the delivery of the note within the contemplation of the statute, appellee would be entitled to recover upon the note under the peculiar facts of the case. The condition was that the note would not be collectible "until" the vendees paid the $6,000 note due the vendor on November 1. The latter note was not paid on that date. Under the parol condition this default simply served to suspend the maturity of the $2,100 commission note. Certainly this default did not destroy, even if it suspended, the vitality of the commission note, for it will not be denied that, if the vendees had subsequently paid off the $6,000 purchase-money note, the commission note would have thereupon automatically matured, even under the terms of the parol agreement. The vendee's default in the $6,000 note put the vendor to an election between the remedies of rescission or foreclosure. If he had seasonably rescinded, then, under the parol agreement, if enforced, appellee's right to enforce payment of his commission would have terminated. But appellant did not elect to rescind. On the contrary, he affirmed the sale by hypothecating the $6,000 purchase-money note to third parties, receiving full face value therefor in cash, which he appropriated to his own uses. By this act appellant brought to pass the very contingen-

cy which rendered his obligation to appellee absolute, under the terms of the parol agreement. And shortly afterwards he recognized the binding effect of his note to appellee by paying a year's interest thereon.

Nearly a year after thus collecting and appropriating to his own uses the proceeds of the $6,000 note, and after thus affirming the vitality of his obligation to appellee by paying the interest thereon, Helmke entered into a new contract with his vendees, whereby he took back the land he had previously conveyed to them, thereby waiving his legal remedy of foreclosure of his lien for the balance of the purchase price. Even if he had not previously received the proceeds of the $6,000 note, thus maturing his obligation to appellee under the terms of the parol agreement, he would not be permitted to avoid his obligation to appellee by entering into this new contract with his vendees, without the acquiescence of appellee. Adams v. Johnson, supra. In the cited case, under a state of facts identical with those we are dealing with, it was said by the Commission of Appeals: "The balance due on this $7,450 note might have been realized in cash had sale under forms of law been made. It should not remain in the power of any man to defeat a realtor of his commission by making a private agreement with his debtor to which the realtor, claiming a commission, is not even a party. If the property had been sold under the lien and some one had bid the balance due on the note, then the commission clearly would have been due. Under a decision by the Supreme Court of Illinois, in the case of Crane v. Eddy, 191 Ill. 645, 61 N. E. 431, 85 Am. St. Rep. 284, that would have been true, even though the Johnsons [vendors] themselves had bid in the land for the amount due on the note."

Appellee's motion for rehearing will be granted, the previous order of reversal will be set aside, the opinion thereon withdrawn, and the judgment affirmed.