**L. J. SCHMIDT et al., Appellants,**

v.

**C. H. KUPER et al., Appellees.**

**No. 6866.**

Court of Civil Appeals of Texas.

Amarillo.

. May 25, 1959.

Rehearing Denied May 27, 1959.

Simpson, Adkins, Fullingim & Hankins, R. C. Hamilton, Amarillo, for appellants.

King Fike, Dalhart, Carl M. Shinn, Lamar, Colo., Brown & Brown, Council Grove, Kan., for appellees.

CHAPMAN, Justice.

This is a summary judgment case. Appellee, C. H. Kuper, brought suit in the court below against L. J. Schmidt and L. W. Schmidt and Schmidt Brothers, a partnership, composed of the two brothers

just named, on two promissory notes executed by L. J. Schmidt and L. W. Schmidt. The note designated in the record as Exhibit A was in the principal sum of $7,148 dated December 31, 1953, payable to the order of C. H. Kuper and due twelve months after date. The note designated in the record as Exhibit B was executed by the same parties, was in the principal sum of $62,709.28 dated December 12, 1953, payable to the order of C. H. Kuper or Earline Kuper and was due twelve months after date. Each provided for 5 per cent interest and 10 per cent on both principal and interest as attorneys' fees.

Appellee's pleadings show that at the time of the execution and delivery of the two notes Earline Kuper was the wife of C. H. Kuper. They were divorced on April 20, 1958, but the record shows she owned, at the time of the trial, an undivided one-half interest in both notes. Being a sister of the appellants, Schmidt, the record shows she refused to join in a suit on the notes. The limitation period being close at hand she was made an involuntary plaintiff. No answer was made by her except an answer by Carl M. Shinn of Lamar, Colorado, one of the attorneys representing appellants, Schmidt.

Depositions of all parties to the suit were taken except Earline Kuper's. Appellee filed a motion for summary judgment and upon a hearing on the motion the two notes, the pleadings and all depositions were introduced in evidence. Summary judgment was granted by the trial court awarding Earline Kuper one-half of the principal and interest on both notes and to appellee one-half of the principal and interest and the full attorneys' fees of 10 per cent on the principal and interest on both notes. Earline Kuper has perfected her appeal only from that portion of the judgment awarding appellee all attorneys' fees. Appellants, Schmidt, have perfected their appeals on that part of the judgment regarding the small note which awarded to appellee all of the attorneys' fees in said note. Other than for that part they admit

in the record of owing the small note. They predicate their appeal from the judgment on the large note, Exhibit B, upon two points; (1) the record raised a material fact issue as to a conditional delivery of the note, which condition had not been fulfilled; and (2) appellee was not entitled to recover all of the attorneys' fees provided in said note. Appellee, in his counterpoint to appellants' first point, says "(1) Appellants' pleading does not raise any issue as to a conditional delivery of note No. 2 (Exhibit B); (2) The testimony of the appellants unequivocally refutes that note No. 2 was conditionally delivered."

The pleadings of appellants allege in substance that appellee requested that defendants execute the large note in order that their income tax return might be made on the loss; that he represented to them that an audit of the records revealed there was a true and correct loss on the cattle of $94,081.77; that he would make available to the Schmidts the records of such audit; that if the records did not substantiate the $94,081.77 loss, the note would be of no force and effect; that defendants executed and delivered the note to appellee to be effective only when and if he furnished them the audit records showing that the cattle sustained such loss; that he has failed and refused to make those records available, and, therefore, defendants are not liable on the large note until such time as such proof is furnished them.

The pleadings concerning the making of income tax returns are wholly insufficient to show a conditional delivery and there are not any depositions, affidavits, admissions, or like "proof" supporting them.

As applicable to our case, Art. 5932, Sec. 16, Vernon's Ann.Civ.St., of The Negotiable Instruments Act provides as follows:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto.

As between immediate parties, * * the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument. * * And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved."

A parol condition affecting the delivery of a written obligation is enforceable under the statute just quoted; while a parol condition affecting the payment of the delivered written instrument is not enforceable if it operates to add to, take from, or vary, the terms of the written instrument. Helmke v. Prasifka, Tex.Civ.App., 17 S.W.2d 463, 465 (writ refused). In applying this well-settled rule of law to the pleadings alone of appellants we believe they constituted sufficient allegations of a conditional delivery of the note. Under the pleadings delivery was conditioned and if the condition was not fulfilled the note was to be of no force and effect and such condition would not add to, take from, or vary the terms of the written instrument. However, the sufficiency of the allegations in a pleading do not determine a motion for summary judgment. The Honorable Robert W. Stayton, Professor of Law, at the University of Texas has said, "But, while there are decisions to the contrary, the better reasoned cases decide that mere pleadings do not show that there is a genuine issue of fact, and thus prevent summary judgment, but that the showing is to be made by depositions, admissions, affidavits, or like 'proofs,' one, some or all." Vol. 29, Texas Law Review, p. 688. This statement is supported by Christianson v. Gaines, 85 U.S.App.D.C. 15, 174 F.2d 534, 536 and William J. Kelly Co., Inc. v. Reconstruction Finance Cor-

poration, 1 Cir., 172 F.2d 865, 866. Our summary judgment rule, 166-A was adopted from Federal Rules of Civil Procedure, Rule 56, 28 U.S.C.A. and we have ample case book authority from our state courts following the pronouncements of the Federal cases just cited. Schepps v. American District Telegraph Co. of Texas, Tex.Civ. App., 286 S.W.2d 684; Reese v. Davitte, Tex.Civ.App., 255 S.W.2d 1015. We believe the authorities just cited constitute the better reasoning for, as said in William J. Kelly Co., Inc. v. Reconstruction Finance Corp., supra [172 F.2d 866], "In many cases there is no genuine issue of fact although such an issue is raised by the formal pleadings." In Reese v. Davitte, supra [255 S.W.2d 1017], the Fort Worth Court said, " * * * even though a petition may state a cause of action, nevertheless if on a motion for summary judgment proof fails to show any genuine issue regarding a material fact, the granting of summary judgment is proper."

The execution and delivery by appellants of the $62,709.28 note is in the record without contradiction from any source, thus placing appellants in the position of having to show a defense thereto. Had appellants made "proof" in accordance with their unsworn pleadings, we believe the record would have shown a conditional delivery and a fact issue would have been made. The only "proof" we have in the record for appellants are their depositions. So let us now examine those instruments to determine their "proof."

The record shows that appellee and L. J. Schmidt went to Lamar, Colorado, to the home of L. W. Schmidt and presented the records he had of their loss on the cattle feeding and that he left what records he had with him. L. W. Schmidt called the Shannon Feed Yards in California that evening and asked them to send him all available figures on the feed cost, gain, etc., which were duly mailed to and examined by him prior to the signing of the note.

The testimony in his deposition most favorable to his contention says:

"So, as near as I can recall, it must have been in the neighborhood of three weeks when my wife and I came to this wedding and we ate dinner at Mr. Kuper's house and it was at that time that he brought this note out and he said, 'Now, Earline and I are straightening up our finances at the bank and all of this and we need to get all of this straightened up and I would like for you boys to sign this note.' I said, 'Carl, I still haven't got this thing thrashed out. There is something wrong' and so we discussed that along and he said, 'Well, I sure hope you find it.' He said, 'Do you have any idea where it is at?' I said, 'No, I don't as yet. I am going to have to get some more figures but something is wrong some place. There has got to be. There is not that much loss in the cattle.' He said, 'Why don't you boys go ahead and sign this note. It is all in the family and when—ever we find the trouble—it is all in the family—we will straighten it out and make it right' and that is the agreement I signed the note under."

The testimony given in the deposition of appellant, L. J. Schmidt, most favorable to the contention here made by appellants, Schmidt, in urging error of the trial court in awarding appellee the summary judgment is as follows:

"Q. When did you first become suspicious that something was wrong with this cattle transaction? A. Well, I wasn't satisfied with it at the time when the whole thing was supposedly—when we signed the note.

"Q. You weren't satisfied with the deal when you signed the note? A. No, sir.

"Q. Did you think something was wrong at that time? A. Yes, sir.

"Q. And, did you make any objection at that time or say anything? A. Well, it come about in this way: You see, Carl had been in and out with Sister. They were having trouble, which was in—

"Q. Domestic trouble? A. Yes, sir; and, he came back, you see, and he assured her that he was going to stay at home and behave himself and he assured Brother and I the same thing. So, we didn't like the figures. In fact, my own wife told me I was crazy for signing it because he had never shown the sale sheets of the cattle. He said he lost them.

"Q. Then, you never did see the sales sheet or any records pertaining to the cattle? A. He said he had lost the bulk of the sales sheets.

"Q. Did you ever see any of the sales sheets? A. Saw a few of them; minor—small lots.

"Q. Where did you see those? A. He showed them right in my front room.

"Q. Was that before you signed the note? A. Yes, sir; but, for the reason I signed this, now, we had to get together and, if I remember right, it was in Sister's home and Carl said, 'Well, boys, why don't you sign this and we can kind of get this behind us. If it isn't right, we will work it out and make it right.' But, along with that, late in May, we had a conference. Lail's wife is Carl's sister. She told him not to sign that. My wife told me not to sign it; but, in spite of that, we figured we could talk to him, figure it out, and maybe if it would save a home, we signed the note.

\*   \*   \*   \*   \*   \*

"Q. When did you first raise an objection to Mr. Kuper about this? A. Well, at the time of the note, he knew we wasn't satisfied with it.

"Q. You told him at that time you weren't satisfied with it? A. Well, he—yes. Not just point blank because we had been in lots of business ventures through the years and I found Carl a very fair man up until this time and I figured we could sit down, after him and Sister got things ironed out better, and just figure the thing out.

"Q. Then, when you signed this big note—the sixty two thousand and some dollar note—you, in your own mind, was sure that it wasn't correct? A. That is right.

"Q. And, did you ever raise any objection to Carl after you signed the note? A. Well, directly, I would say no."

■ "The burden of proving that there is no genuine issue of any material fact is upon the movant, and 'All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment. * * *

■ "In determining a motion thus depending upon extrinsic evidence, the court's task is analogous to that which he performs on a motion for directed verdict. He accepts as true all evidence of the party opposing the motion which tends to support such party's contention, and gives him the benefit of every reasonable inference which properly can be drawn in favor of his position." Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 931. However, our Supreme Court has also held that "Regardless of what character of evidence is legally competent to show that a promissory note which has been delivered to the payee is merely a token of some prior or contemporaneous oral agreement between the parties, the statute (Art. 5932, Sec. 16 Negotiable Instruments Act) undoubtedly regards the delivery as having been made for the purpose of giving effect to the instrument according to its terms, unless it be

shown that by agreement of the parties, *including the payee*, the delivery was made for some other purpose." Anderson v. Ladd, 131 Tex. 479, 115 S.W.2d 608, 610. (Emphasis added.)

■■ In applying these well settled and proper rules to appellants' depositions, giving to such testimony all presumptions and conclusions favorable thereto, disregarding appellee's deposition to the effect that L. J. Schmidt told him he had checked it "and it came out just exactly to the penny the way I had it figured" and disregarding all other contradictory testimony of appellee, there is still not anything in the record to show a genuine issue of any material fact concerning appellants' contention in point one. There is not even an inference in the depositions that appellee ever agreed to or understood that he was to furnish records substantiating the loss other than what he had already furnished. The most favorable statement in the record for appellants' contention is in L. J. Schmidt's deposition where he said Kuper told them, "Why don't you boys go ahead and sign this note. It's all in the family and whenever we find the trouble * * * we will straighten it out and make it right." Even this statement does not relate to the delivery of the note but rather to the payment or non-payment of the amount of the loss (urged by appellants to be less than the amount of the note), and considered in its most favorable light would only show a parol agreement for payment on the basis of subsequent undated accounting and would qualify and vary both the absolute unambiguous obligation in the face of the note to pay a certain amount and the definite date of payment and would, therefore, have no effect upon the writings. Chalk v. Daggett, Tex.Com.App., 257 S.W. 228, 229; Helmke v. Prasifka, supra; Rector v. Evans, Tex.Com.App., 288 S.W. 826.

Appellants urge two cases by this court, Bynum v. Peoples State Bank of Turkey, Tex.Civ.App., 243 S.W.2d 190 and Hunley v. Garber, Tex.Civ.App., 254 S.W.2d 813 as

authority for their contention. We find no fault with the holding of those cases. They clearly showed a delivery upon a definite and positive condition never fulfilled and did not qualify or vary the obligations shown in the faces of the instruments. They come within the rule stated by our Supreme Court in Denman v. Hall, 144 Tex. 633, 193 S.W.2d 515, 517, wherein that court said, "In those cases wherein testimony of a contemporaneous oral agreement was held proper to show that the written contract never took effect because the oral condition was never satisfied, the condition did not in any way contradict or vary the terms of the writing." Accordingly, appellants' point one is overruled.

■■ It is without contradiction in the record that Earline Kuper, former wife of appellee, owned an undivided one-half interest in the two above-described notes and that she refused to join appellee in a suit on them against her brothers. Appellee, under authority of Rule 39(a), Vernon's Ann.Tex.Rules, joined her as an involuntary plaintiff and the trial court awarded appellee, though he owned only an undivided one-half interest in the notes, the full 10 per cent attorneys' fees on the full amount of principal and interest on both notes.

Appellee agrees by brief there is no authority under Rule 39(a) giving the plaintiff in a suit attorneys' fees that otherwise would belong to the co-owner where said joint owner is required to be sued as an involuntary plaintiff. None of the parties have cited any satisfactory authority on the point, nor have we found any. The purpose of a promise to pay attorneys' fees is to indemnify the payee or holder of the note for expenses which he may incur by default of the maker. The stipulation is, therefore, construed as evidencing a contract of indemnity and not for liquidated damages. 6 T.J., Section 327, p. 1024 and cases there cited. It has been textually stated that the court may not allow fees in a greater amount than that stipulated for.

6 T.J., Section 328, p. 1025. Appellants have cited a number of cases to the effect that a plaintiff may recover attorneys' fees only on the amount due on the note or notes sued on. McSpadden v. La Force, Tex.Civ.App., 39 S.W. 163; Ware v. Paxton, Tex.Civ.App., 266 S.W.2d 218; Hutson v. Chambless, Tex.Civ.App., 295 S.W.2d 723. Since the amount due appellee was only on his one-half undivided interest we do not believe he could recover for himself also on Earline Kuper's interest in the note. To allow him to do so would be to give him 20 per cent attorneys' fees on the amount owed him and would be contrary to both law and reason. Earline Kuper did not employ an attorney and there is not any pleading in the record by anyone with authority from her to request attorneys' fees for her. We know of no law that would preclude a person holding an interest in a note from waiving attorneys' fees and the record in this case indicates that is just what she did.

The judgment of the court below is reformed to give appellee, C. H. Kuper, attorneys' fees on the principal and interest on only his undivided one-half interest in the notes, and as reformed the judgment is affirmed.