IRWIN v. MOORE.    (No. 9059.)

(Court of Civil Appeals of Texas. Ft. Worth. March 15, 1919.)

1. APPEAL AND ERROR ⊜➾927(7)—REVIEW— EVIDENCE ON WHICH VERDICT WAS DIRECTED.

In determining the correctness of peremptory instruction for defendant, the Court of Civil Appeals must give plaintiff's evidence its strongest probative effect.

2. BROKERS ⊜➾55(1), 56(1)—REALTY BROKER —RIGHT OF OWNER TO SELL.

Where owner of land did not give a broker exclusive right to sell, at any time before the broker procured and presented a purchaser ready, able, and willing to buy on the owner's terms, the owner had a right to sell the land himself or through another agent.

3. BROKERS ⊜➾56(1)—REALTY BROKER—RIGHT OF OWNER TO SELL.

Where realty broker without exclusive right to sell, on bringing a prospective purchaser to the owner, learned that the owner had agreed to sell through another agent to an unknown party for a certain cash payment down, and had agreed to wait until the evening for the cash, but promised to sell to the broker's client if such cash payment was not made, the owner, despite his promise, had a right when the other party returned without the cash to accept a written contract and sell to them.

Appeal from Somervell County Court; S. G. Tankersley, Judge.

Suit by C. B. Irwin against T. W. (Buck) Moore. From judgment for defendant, plaintiff appeals. Affirmed.

---

Levi Herring and C. D. Spann, both of Glen Rose, for appellant.

E. A. Rice and F. E. Johnson, both of Cleburne, for appellee.

BUCK, J. Plaintiff, C. B. Irwin, sued T. W. (Buck) Moore for agent's commission in the sum of $187.50, being 5 per cent. of $3,750, the selling price of, and the price which plaintiff claimed defendant had agreed to take for, his 100-acre farm. Plaintiff alleged that defendant had listed the property with plaintiff to sell at the price stated, and that he had found a purchaser ready, willing, and able to buy at the price stated, and upon the terms which defendant agreed he would make to the purchaser. Defendant pleaded by way of general demurrer and general denial, and that he had listed the property with another real estate firm, Roden & Collings, who found a purchaser for defendant before plaintiff brought his client to see defendant. There were other pleas made by defendant not necessary here to mention. The court instructed a verdict for defendant as to plaintiff's claim, and for plaintiff as to defendant's plea in reconvention. Plaintiff has appealed.

[1] In determining the correctness vel non of the peremptory instruction given, it will be necessary for us to consider the proof offered by plaintiff as to his right to recover and to give the strongest probative effect to such evidence. Irwin testified: That during the latter part of August or the first of September, 1917, he had a conversation with defendant relative to selling his 100-acre farm. That defendant stated to him that he would sell the farm for $3,750, of which amount $1,750 was to be paid in cash, and the balance in equal annual payments for a period of five years with 10 per cent. interest. That defendant listed the property with plaintiff and agreed to pay him 5 per cent. commission for selling the same. That plaintiff immediately set about to find a purchaser, and after discussing the matter with several parties who were interested and were in the market to buy a farm, and after the negotiations with said parties had failed, about the last of September, 1917, he found one Mr. Coon Woods, who stated that he knew the place well and believed that it was worth the money asked. That a day or two after this first conversation Woods came to plaintiff and asked him if he thought Moore would sell the place with the growing peanut crop; to find out if he would do so and how much he would want for the crop. Plaintiff then saw defendant and told him of the conversation he had had with Mr. Woods, and that he believed Woods would give defendant $4,500 for the crop and farm. That he (plaintiff) would not charge defendant any commission on the sale of the crop; that all he would expect would be a commission on

the sale of the land. That defendant told plaintiff that he would consider the matter and take it under advisement. That a day or so later Woods came to plaintiff and told him that he had made arrangements to buy the Moore farm and was then ready to do so. That plaintiff and Woods went out to the Moore farm, got out of the car, and walked through the farm in order that Woods might see a "wash" that ran through it. That while going over the place they found a crop of volunteer watermelons, stopped and ate one, and then went on to the house, where they found Mr. Moore, his wife, and another party out at the lot. That he told Moore that he had brought Mr. Woods out to buy his place and to come down in the morning and make him a deed. That Moore replied: "I guess you are too late, as Roden & Collings have just been here and said they had a client they believed would take the place. They stated to me that their client could pay as much as $1,000 cash. I told them I would not accept that amount. Then they asked me if I would accept $1,250 as a cash payment. I told them I would not. They wanted to know if I would accept $1,500 as a cash payment. I told them I would not accept less than $1,750 as a cash payment, and they stated to me that they would go back to town and see if their client could raise the other $750, and if he could they would be back by night and bring the money and close the deal." The defendant then stated to Woods: "If they don't come back by night with the money to make the cash payment, I will come to town in the morning and make you a deed, Mr. Woods." That plaintiff then asked Moore what time Roden & Collings were to report, and Moore replied: "By night." That Woods then stated: "Well, Irwin, it will only be fair to give them until night." That plaintiff and Woods then returned to Glen Rose, and that plaintiff went out to the Moore place the following morning about 10 o'clock, as Moore had failed to come to town, as he had agreed on the evening before, and saw Moore and asked him: "Buck, what have you done? Did Roden & Collings bring the money?" That Moore replied: "No; they did not bring the money, but brought a contract for me to sign." That plaintiff then asked Moore if he signed it and Moore replied that he did. That he asked Moore if he knew whom he had sold to, and he said that he did not. There was some further conversation between defendant and plaintiff as to whether one Hubert Thomas was the client of Roden & Collings or not, and plaintiff said that he believed Thomas was the party, and, if he was, that he was one of his clients, as he had been talking to Thomas about the place and he was interested in it. That about a week later plaintiff saw defendant again in Glen Rose and asked him if he had found out to whom he had sold, and de-

fendant replied that he did not know but that he thought it was Hubert Thomas. That plaintiff then replied that he was entitled to his commission. That defendant further said: "Suppose that some one else in the printing office buys the land?" That plaintiff replied: "It makes no difference; I am entitled to my commission." That defendant then said: "I am not going to turn over my deed until this commission proposition is settled."

Woods' testimony in the main coincided with plaintiff's testimony, and he further stated: That he had made arrangements with a banker at Glen Rose to furnish him the sum of money necessary to buy the place, and that he was ready, able, and willing to buy the place, and was so at the time he testified. That, while he was willing to purchase the crop on the place, yet, on the occasion of the conversation with Moore at the latter's home, it was the farm he went out to buy.

The evidence further showed: That in the afternoon of the day when the conversation was had between Irwin and Woods, on the one hand, and Moore, on the other, at the latter's farm, that Roden & Collings returned to the farm and presented a contract of sale for defendant to execute. By the terms of this contract defendant was to receive $3,750, less $250 commission, payable to Roden & Collings, $1,750 in cash and the balance in vendor's lien notes. That defendant was to furnish an abstract showing good title in him and was to have not to exceed 60 days in which to prepare the same. That Roden & Collings and defendant executed this contract. While Roden & Collings were mentioned in this contract as the vendees, the verbiage of the contract disclosed that in so entering into the contract they were acting for an undisclosed client.

[2] There is nothing in the evidence to show that the plaintiff had the exclusive right of sale of the land. It is apparent that defendant, at any time before the plaintiff procured and presented a purchaser ready, able, and willing to buy the land at the price and upon terms satisfactory to defendant, had the right to sell the land himself or through another agent. In fact, in the oral argument it was admitted by counsel for appellant that, if Roden & Collings or their client had returned with the money for the cash payment at any time during the day of the conversation between plaintiff and Woods and the defendant at the horse lot, defendant would have had the right to consummate the deal with Roden & Collings or their client, and that he would not in that event be liable for any commission to plaintiff. But it is urged that, since the cash payment was not made by Roden & Collings or their client on that day, defendant had no right to extend the time for the cash payment and to enter into the contract of sale above mentioned, and that as defendant had promised, in the event the money was not presented by Roden & Collings on said day, that he would go to Glen Rose on the following day and execute a deed to Woods, plaintiff had fulfilled all the requirements which entitle him to his commission.

[3] We are of the opinion that under the plaintiff's showing defendant was not precluded from closing the deal with Roden & Collings or their client, the negotiations towards which had already begun and obligations arising out of which defendant had already assumed. If Roden & Collings' client had returned that afternoon with the money, it is admitted by appellant that the appellee would have been authorized to have accepted such client's tender, and to have refused to consummate the deal with appellant's client. We think that appellee would have had such right even though the money had not been actually paid by Roden & Collings' client until after the abstract of title had been furnished, the deed executed, and other details of the trade devolving upon appellee had been complied with by him. It can hardly be reasonably said that the evidence cited shows that it was contemplated by the parties that the money should actually pass from Roden & Collings' client to Moore on the day mentioned, but that the prospective purchaser or his agent was to return during the day with assurances satisfactory to Moore that the full cash payment required by the latter was to be paid upon the furnishing of satisfactory evidence of title and the execution of the deed. Moore accepted the written contract of Roden & Collings as satisfactory assurance that the terms demanded by him would be met by them or their client. Therefore we conclude that, so far as Irwin or Woods was concerned, and so far as they had the right to question the finality of the transaction between Moore and Roden & Collings or their client, the deal was consummated on the day specified. For discussion of the principles of law governing agency pertinent to the issues disclosed in this case, see Edwards v. Pike, 49 Tex. Civ. App. 30, 107 S. W. 586; Case Threshing Machine Co. v. Wright Hdw. Co., 61 Tex. Civ. App. 481, 130 S. W. 729; Duval v. Moody, 24 Tex. Civ. App. 627, 60 S. W. 269; Mechem on Agency, vol. 2, §§ 2427 to 2457.

We conclude that the trial court did not err in giving the peremptory instruction, and the judgment is affirmed.