BRIDEN et al. v. OSBORNE et al.

No. 2483.

Court of Civil Appeals of Texas. Eastland.

Nov. 24, 1944.

On Rehearing Dec. 22, 1944.

Further Rehearing Denied Jan. 19, 1945.

as a defendant and temporarily enjoined from paying $640 of the purchase price of the land to Briden. H. B. Furr, a real estate agent, was also joined as defendant, it being alleged he was asserting some claim to the subject matter. On March 29, 1943, W. M. Chaney made some kind of answer, and in connection therewith deposited $640 ih court. Defendants Briden and Furr, the one a resident of Tarrant County and the other a resident of Stephens County, having filed pleas of privilege, were on July 6, 1943, dismissed. In other words, the suit as to said defendants was dismissed, leaving Chaney the only remaining defendant. On July 15, 1943, Chaney filed his "First Amended Original Answer and Bill of Interpleader," in lieu of his previous pleading, and therein asserted a cross-action of interpleader against Osborne & Young, and Briden and Furr, thereby bringing Briden and Furr back into the case as cross-defendants. Osborne & Young replying to Chaney's cross-action of interpleader, answered, asserting claim to the $640 on deposit in court on the dual ground that it was due by Briden as a commission for the sale of said land and had been assigned by Briden to them as so much of the consideration paid by Chaney. Cross-defendants Briden and Furr filed anew their pleas of privilege, which were overruled but which action is not under review herein. They also filed motions and pleas seeking dismissal of Chaney's action of interpleader and, subject to same, also answered to the merits, claiming the fund as part of the consideration owing by Chaney to Briden and in the same amount acknowledged by Briden to be due to Furr as a commission.

In a non-jury trial the Court gave judgment awarding the $640 (less attorneys fees to Chaney) to Osborne & Young. Briden and Furr have appealed.

Interesting questions are presented relative to Chaney's right to maintain his action of interpleader, but we shall assume, rather than decide, that he had such right.

■ We sustain the point that "There is no evidence to support the Court's finding that Osborne & Young, or either of them, were duly licensed real estate dealers in March, 1943, when the land was· sold." There was evidence that they operated as real estate dealers at said 'time, and that they were licensed dealers in 1944, but there seems to be an entire absence of any evidence that they held such license in

Harrell & Bowers and L. H. Welch, all of Breckenridge, for appellants.

A. K. Doss and E. N. Kirby, both of Abilene, for appellees.

FUNDERBURK, Justice.

Osborne and Young, real estate agents, on March 23, 1943, sued A. C. Briden to recover a commission of $640, alleged to be due for procuring the sale of land owned by Briden and others in Stephens County to W. M. Chaney for a consideration of $12,800. Said $640 was alleged to have been assigned by Briden ·to Plaintiffs. W. M. Chaney, the purchaser, was joined

March, 1943. There does not appear to be any basis in the evidence to support a presumption or inference that at that time they were licensed dealers. The statute requires *proof,* as well as allegation of such fact. Vernon's Ann.Civ.St. Art. 6573a, sec. 13; Gregory v. Roedenbeck, 141 Tex. 543, 174 S.W.2d 585.

We are also of the opinion that the further point is good that the evidence is insufficient to support a finding that Osborne & Young had a contract in writing in compliance with section 22 of Vernon's Ann.Civ.St. Art. 6573a. Certain letters were relied upon as constituting the required written contract. If sufficient in other respects, they were insufficient, we think, in that they do not contain any description of the land nor designate any means of identifying it. As supplying this deficiency, appellees rely upon a letter dated September 11, 1942, written by Briden to Vantreese and wife. This letter contained a description of the land, but the letter was no part of the written contract (if any) between Briden and Osborne & Young. Such letter was not referred to in any of the correspondence relied upon to constitute the contract, and the description in the letter cannot supply the want of description in the contract. The applicable principle of law is believed to be that stated in the black letter text of Corpus Juris Secundum as follows: "In order that separate writings may be considered together their relation or connection with each other must appear on their face; and this requirement is satisfied either by express reference from one writing to the other, or, at least where each writing is signed, by internal evidence of their unity." 37 C.J.S., Frauds, Statute of, p. 659, § 178; Cowan v. F. H. E. Oil Co., Tex.Civ.App., 169 S.W.2d 994; Walker Ave. Realty Co. v. Alaskan Fur Co., Tex.Civ.App., 131 S. W.2d 196; Osborne v. Moore, 112 Tex. 361, 247 S.W. 498. The only connection between Briden's letter to Vantreese and his letters to Osborne & Young is the fact that Vantreese delivered his letter to Osborne & Young. That fact rests wholly in parol. It is entirely absent from any of the letters.

Another point is that: "The Court erred in awarding any part of the $640.00 to Osborne and Young, because the undisputed evidence shows that the land was listed with several dealers, and that they were never able to get a binding agreement from the purchaser to buy at the price fixed by the owner." It is true, we think, that the undisputed evidence did show that, within the knowledge of Osborne and Young, the land was listed for sale with independent dealers. It is also true that Osborne & Young, independently of the efforts of the rival dealer, Furr, never were able to procure an agreement of Chaney to purchase the land upon the terms they were authorized to find a purchaser for it. The real question is one of the proper application of the law to those facts.

In Edwards v. Pike, 49 Tex.Civ.App. 30, 107 S.W. 586, 588, the Court after observing that ordinarily "when it is shown that the agent was instrumental in bringing the buyer and seller together, the fact that the agent was the procuring cause of the sale afterwards consummated is sufficiently established," further went on to say that "each of two or more brokers within the knowledge of the other has a contract authorizing him to effect a sale of the same property, the fact that one was instrumental in bringing the parties together fairly cannot be made the test of the liability of the owner of the property for commissions claimed." The Court reasoned that: "The owner has a right to authorize more than one broker, each independently of the other, to effect a sale of his property; and, so long as he remains neutral, he ought to be permitted without incurring liability for commissions to more than one of them to consummate the sale of the property through the one who first produces a person ready to buy it, whether the agent producing the purchaser is the one who first brought him and the buyer together or not." Id. This decision has been many times cited and followed by the courts of this state. Keener v. Cleveland, Tex.Com. App., 250 S.W. 151; Ogden v. Yates' Estate, Tex.Civ.App., 154 S.W.2d 215; Berry v. Wittenburg, Tex.Civ.App. 145 S.W.2d 673; Heath v. Elliston, Tex.Civ.App., 145 S.W.2d 243; Higdon v. Channell, Tex.Civ. App., 109 S.W.2d 254; Hughey v. Martin, Tex.Civ.App., 15 S.W.2d 656; Walker v. Van Valkenberg, Tex.Civ.App., 291 S.W. 936; Brown v. Odneal, Tex.Civ.App., 239 S.W. 350; Irwin v. Moore, Tex.Civ.App., 212 S.W. 710; Griffith v. Shofner, Tex. Civ.App., 184 S.W. 340; Bellis v. Hann & Kendall, Tex.Civ.App., 157 S.W. 427.

In Keener v. Cleveland, supra [250 S.W. 153], the decision in Edwards v.

Pike, supra, was interpreted as follows: "That case applies the rule that, where land is listed with more than one agent, one of whom begins negotiations with a prospective buyer, but concludes no binding agreement, and later another agent begins negotiations with the same buyer, who abandons the prior negotiations, and a sale results by reason of the efforts of the last agent, if the seller maintains an attitude of neutrality, there can be but one recovery, and the agent who actually concludes the sale is the one entitled to the compensation." It is noteworthy that, notwithstanding such interpretation and implied approval, of the decision in Edwards v. Pike, it was deemed by the court to be not inconsistent with the proposition that, in any case, the true test is whether a particular broker claiming a commission was the procuring cause of the sale. This is in line with the rule declared in C.J.S. as follows: "Where a broker is the procuring cause of the transaction, he is entitled to his commissions, although the transaction is concluded on different terms through a second broker; but where a broker fails to bring about a meeting of minds, and another broker intervenes and is instrumental in procuring a sale of the property on different terms, although to the former's customer, the former is not entitled to a commission." 12 C.J.S., Brokers, p. 198, § 86. It is helpful to consider the above quotation in connection with the following from the same authority:

"Where several independent and rival brokers are employed to effect the same transaction, only one commission is to be paid and that is to be paid in full to the broker who first succeeds and is the procuring cause of the transaction." 12 C.J.S., Brokers, p. 213, § 92; Willingham v. Thompson, Tex.Civ.App., 133 S.W.2d 833.

And this: "So, where the person introduced by the broker is not able, ready, and willing to buy on the terms prescribed by the owner, the broker is not entitled to compensation on a sale being subsequently made on those terms by the principal to the same person through another broker." 12 C.J.S., Brokers, p. 215, § 92; Duval v. Moody, 24 Tex.Civ.App. 627, 60 S.W. 269; Montgomery v. Biering, Tex.Civ.App., 30 S.W. 508; Higdon v. Channell, supra.

All these authorities considered together seem to us to warrant the following generalizations:

(1) Whether there be but one broker involved, or more than one independent broker, the one who is the procuring cause of the sale is the one entitled to a commission.

(2) Where there is but one broker involved and he introduces a prospective purchaser to the seller and they afterward conclude the sale, whether upon the terms originally authorized or other terms, there is a *presumption* that the broker was the procuring cause of the transaction.

(3) Where there are more than one independent broker involved, and it is shown that one broker introduced a prospective buyer to the seller and that afterward the sale was concluded by the aid of another broker, there is no *presumption* that either broker was the procuring cause of the sale. In such case the broker, seeking to hold the seller liable for a commission, must, unaided by any presumption, plead and prove he was the procuring cause of the sale.

Manifestly the question may be one of fact to be found by the jury or judge, or the evidence may be such as to make the question one of law. If the plaintiff, after negotiations with a prospective purchaser, fails to achieve a meeting of the minds upon the terms upon which he was authorized to procure a purchaser, and thereafter through the negotiations of an independent broker such meeting of the minds was achieved, resulting in a consummated sale upon the terms authorized to both brokers, then, as a matter of law, we think, plaintiff was not the procuring cause of the sale.

It is our conclusion that, assuming for purposes of the present question, that Osborne & Young were at the time duly licensed real estate dealers and had the necessary written contract to authorize them to procure a sale and collect a commission, if they were the procuring cause of the sale, they were, according to the uncontroverted evidence, as a matter of law, not such procuring cause; and not entitled to a recovery.

The $640 belongs to Briden as part of the consideration for the sale of the land. Briden, however, not resisting Furr's claim to it as a commission on the ground that Furr had no contract in writing, but on the contrary, expressly conceding Furr's right to it, he thereby waived the fact that Furr's contract was not in writing and

authorized the court, in Briden's right, to award recovery of the $640 to Furr. It is our conclusion that the judgment should be reversed and judgment rendered that Osborne and Young take nothing, and that judgment be rendered awarding recovery of the $640 to Furr. It is accordingly so ordered.

### On Rehearing.

Both Osborne & Young and W. M. Chaney have filed motions for rehearing. As to the motion of Osborne & Young, it seems to us that it raises no new question not disposed of in the original opinion and, therefore, requires no further discussion.

In the original opinion we assumed, without deciding, that Chaney was entitled to maintain his cross-action for interpleader. Interesting questions regarding that subject were presented, but we deemed it unnecessary to decide them. It is pointed out, however, in Chaney's motion for re-hearing that the lower court awarded $100 as attorney's fees to Chaney, payable out of the deposit, and that since we assumed Chaney's right to maintain the action, we should affirm that part of the lower court's judgment awarding him the $100. To do so would require the $100 to be deducted from the $640 deposited in court, thereby, of course, limiting the recovery of Briden and/or Furr to $540. We recognize the necessity for some change in our judgment.

In Chaney's cross-action for interpleader his prayer was that "Your petitioner be discharged with his costs, together with a reasonable attorney's fee to be fixed by the Court *and to be taxed as costs,*" etc. It is to be observed that said pleading did not pray for the allowance of the $100 attorney's fees out of the $640 deposited in court. Although there may be some question about Chaney's right to maintain his action of interpleader on account of denying, in effect at least, that the $640 belonged to Briden, we are rather inclined to think that his petition of interpleader did show a right to maintain the action based upon the claim of Osborne & Young that the $640 was due them because of an assignment to them of that amount out of the purchase price of the property. On the trial, however, there was no pretense of any proof of such an assignment. The only claim to the fund, tending or designed to support which there was any evidence, was the claim of such sum as a commission, for which Chaney was in no way liable. Conceding, as before, that Chaney had the right to maintain interpleader existing solely by reason of Osborne & Young's claim of an assignment, it would not necessarily follow, we think, that the allowance to him of an attorney's fee would be out of the fund, although usually such an award is provided to be paid out of the fund on deposit. Since Chaney did not even by his pleading request allowance of attorney's fee to be paid out of the deposit, he is in no position to find fault with the judgment which awards him relief according to his pleading.

We are unable to see any principle of justice in requiring Briden to pay $100 as attorney's fee to Chaney, merely because of the unfounded claim of Osborne & Young that Briden had assigned to them that amount of the purchase price of the property. This view seems to be supported in Chancellor v. Chancellor, Tex.Civ.App., 23 S.W.2d 761, (error ref.). We are, therefore, inclined to the view we did not err in awarding Briden, and through Briden, Furr, recovery of the $640. However, Chaney is entitled to an award of his costs, such recovery of costs to include the sum of $100 for attorney's fee, to be adjudged against Osborne & Young.

It is accordingly so ordered.