Annie Lou McPHERSON, Independent
Executrix of Estate of A. B. McPher-
son, Deceased, Appellant,

v.

The LONGVIEW UNITED PENTECOS-
TAL CHURCH, INC., Appellee.

No. 898.

Court of Civil Appeals of Texas,
Tyler.

July 15, 1976.

Rehearing Denied Aug. 26, 1976.

Merritt H. Gibson, Earl Sharp, Sharp, Ward & Ross, Longview, for appellant.

Rex A. Nichols, Nichols & Parker, Longview, for appellee.

McKAY, Justice.

This suit was brought by appellee, The Longview United Pentecostal Church, against the building contractor, A. B. McPherson, now deceased, on a contract for the construction of a church building and parking lot for appellee. Annie Lou McPherson, Independant Executrix of the Estate of A. B. McPherson, was substituted as a party. Appellant answered that appellee had abandoned the plans and specifications and made many changes, and that appellee took possession and occupied the building to the exclusion of appellant and in so doing waived any claim that the building was not constructed according to the plans and specifications. Appellant also filed a cross-action seeking $21,809.85 for the extras for changes and additions in materials and equipment requested by appellee, for judgment on a deed of trust note executed by appellee in the sum of $138,000 together with interest and attorney's fee and for damages for failure to pay for the extras.

Trial was before a jury, and the trial court, after disregarding issue 15, rendered judgment that appellant recover $12,715.86 with interest from February 18, 1972 to May 2, 1975, at 6% per annum, and $2,451.87 for extra work and materials, making total recovery of $15,167.73. The principal amount of the note had been paid during the pendency of the suit on April 19, 1973.

Appellee (church) alleged that in July, 1971, it entered into a contract with McPherson by which he agreed to construct a certain church building and appurtenances thereto in Longview in accordance with plans and specifications prepared by an architect, and that the church agreed to pay McPherson the sum of $138,000.00 upon completion and acceptance of the improvements by the church. The church further alleged (1) that McPherson agreed to obtain and pay for the interim financing; (2) that the church had obtained a commitment for permanent financing; and (3) that as an accommodation to McPherson and in order to aid him to obtain interim financing, the church executed and delivered to McPherson its promissory note payable on or before 180 days, in the amount of $138,000.00 together with a deed of trust on the property on which such church was to be built. The pleadings of the church further alleged that McPherson failed and refused to construct a parking lot as required by the contract until after the church employed an attorney. McPherson finally completed the parking lot in July, 1972, but he failed and refused to pay the cost of materials used therein. The church also plead that McPherson failed and refused to pay the cost of pews

which had been installed and for which demand had been made by the supplier of the pews. Allegations were also made that there were various items of poor workmanship by McPherson and that he failed to complete work on the building. It was also alleged there were extra items of work and materials furnished by McPherson which needed adjusting.

Appellee church also alleged that unreasonable demands had been made by McPherson and the First State Bank of Gladewater for payment of the $138,000.00 note as well as interest and attorney's fee. The church prayed that the date of substantial completion of the contract be determined, that it be relieved of any obligation to pay interest before substantial completion and that it be relieved of any obligation to pay attorney's fees.

Appellant's answer and cross-action alleged that the church, in consideration of McPherson's oral agreement to construct improvements according to plans and specifications, on August 23, 1973, executed and delivered to appellant its promissory note for $138,000.00, payable on or before 180 days from date. Appellant asserted the note was unpaid except for the principal sum of $138,000.00 paid April 19, 1973, leaving unpaid principal, interest and attorney's fees of $31,510.00. Appellant also alleged that the church took possession of the building without the consent of McPherson. Appellant described in some detail the changes and extras in the building which were not a part of the original contract, prayed for recovery of $21,809.85 as the reasonable net value of extras furnished, and asked for $3,000.00 as damages for failure to pay for extras. Appellant also sought the $31,510.00 allegedly due on the note as of April 19, 1973, and for interest and attorney's fees after that date. Appellant did not claim any interest on the note from date to maturity.

The trial was before a jury and the verdict was substantially as follows:

1. Several items of materials and labor were found to be extras not contemplated by the contract.

2. Found the reasonable value of the itemized extras.

3. Reasonable value of supervision, overhead and profit for contractor on work done by McPherson in making changes and alterations in the church building was 10%.

4. The date that appellee church accepted the building as complete was February 18, 1972.

5. The jury failed to find that the church took over possession of the building after the contractor told them not to do so.

6. McPherson substantially completed his construction contract with the church in July, 1972.

7. The jury failed to find that McPherson was prevented from completing the contract by February 19, 1972, by the conduct of the church.

8. McPherson had not completed the contract on March 17, 1972.

9. The note bearing date of August 23, 1971, was executed by the church to McPherson to enable him to secure interim financing from the First State Bank of Gladewater.

10. First State Bank of Gladewater, on or about March 17, 1972, was the owner of the note dated August 23, 1971, and the deed of trust lien given to secure payment of such note.

11. The provision in the note dated August 23, 1971, executed by the church payable to McPherson providing for interest from date of execution to maturity at the rate of 7½% per annum was contrary to the terms of the contract whereby McPherson agreed to furnish his own interim financing.

12. On March 17, 1972, the permanent financing the church had arranged for through First Federal Savings and Loan Association could not be secured because the contract of July 22, 1971, had not been completed.

13. The payment of the sum of $138,000.00 was made as soon as practical after an agreement was entered into that the

matter of extras under the contract, interest and attorney's fees would be determined by the lawsuit.

14. The jury failed to find that appellant is entitled to recover any attorney's fees.

15. Appellant is entitled to recover reasonable interest of $3,700.00.

Appellant filed a motion to disregard the findings of the jury and the answers to issues 5 through 15. The trial court disregarded issue 15 only and otherwise overruled appellant's motion and rendered judgment for appellant as above mentioned.

Appellant's first point maintains that the judgment of the trial court should be reversed because the court denied appellant's motion for judgment on the promissory note executed by appellee church. We sustain this point. In reaching that conclusion, we must deal with the questions of (1) whether the unsigned instrument dated July 22, 1971, constituted a written contract for the construction of the church and parking lot; (2) whether appellee church was an accommodation party; and (3) whether the note of August 23, 1971, as a separate writing, may be considered together with the contract of July 22, 1971.

## THE UNSIGNED INSTRUMENT
## OF JULY 22, 1971

■ Appellant argues that the unsigned instrument of July 22, 1971, was not a contract because there was no delivery and no unconditional acceptance by the church; rather, it was only a proposal. We disagree. McPherson, the builder, testified that he entered into an agreement or contract with the Longview United Pentecostal Church, Inc., to construct a church building here in Longview, Texas. Referring to the unsigned contract, McPherson testified as follows:

"Q. Well Mr. McPherson, do you recall having previously testified under oath that the contract that you had with the

Church was based on the proposal that you made to them?

"A. On the original plan, yes sir.

"Q. And the proposal that you drew up as to what you said you would do that has a date on it was the only contract or agreement you had with the Church, wasn't it?

"A. It was that little contract that—

"Q. Yes, sir, that was the contract and agreement that you had with the church, isn't that true?

"A. Yes, sir, as far as that and the papers we had fixed up for the bank.

"Q. But your proposal that you made to them was the basis of the contract and agreement between you and the Church, wasn't it?

"A. Well, it was on that little old slip that we made up and that was as I stated, you know, for—

"Q. And that was made up after all negotiations and talk and everything about how we would do it ceased, wasn't it?

"A. Well, that was when they wanted to—when they started my interim financing.

"Q. Right. Thank you, sir.

"A. And not either one of them, Mr. Nichols, was ever signed or anything, they just wanted a record you know.

"Q. But that was the agreement and contract whether it was signed or wasn't signed is what you've testified a minute ago?

"A. Yes, sir, it was made up for that particular purpose."

Kershaw, president of the church corporation, testified concerning the unsigned July 22, 1971, contract:

"Q. Reverend Kershaw, was there any other agreement for the construction of the Church other than is identified here in Plaintiff's Exhibit Number 1 with Mr. A. B. McPherson?

"A. No sir."

It seems to be undisputed that the unsigned contract of July 22, 1971,[1] was a contract and was *the* contract agreed upon by McPherson, the builder, and Kershaw, the president of the church, for the construction of the church building. There was mutual agreement; there was a meeting of the minds of the parties implied and evidenced by their conduct and course of dealing which showed their consent to be bound. *Haws & Garrett General Contractors, Inc. v. Gorbett Brothers Welding Co., Inc.,* 480 S.W.2d 607, 609 (Tex.1972). Even though several changes were made in the plans and specifications during the progress of construction, the July 22, 1971, unsigned contract was considered and acknowledged by both parties as the contract for the construction of the church and parking lot.

We are of the opinion that the record reflects that all the facts and circumstances lead to the conclusion that it was the intention of the parties that the July 22, 1971, instrument was the contract of the parties and the conduct of both parties so indicates. "An unsigned agreement all the terms of which are embodied in a writing, unconditionally assented to by both parties, is a

written contract." *Simmons and Simmons Construction Co. v. Rea,* 155 Tex. 353, 286 S.W.2d 415 (1955). It should also be noted that appellant did not request an issue on whether there was a contract but relied entirely upon the action on the note. We hold there was a written contract.

## THE CHURCH AS AN ACCOMMODATION PARTY

Appellee church maintains that the $138,000.00 note was executed for the purpose of aiding and assisting McPherson to obtain the interim financing which he agreed to provide in the contract, thus making the church an accommodation maker. The church obtained a jury finding in issue 9 that the note was executed by the church to McPherson to enable him to secure interim financing from the First State Bank of Gladewater.

Appellee church also claims there was a failure of consideration for the execution of the deed of trust note as against McPherson, and that since McPherson reacquired the note from the bank before the trial he was not a holder in due course and such

---

1. "July 22, 1971

"APOSTOLIC PENTECOSTAL CHURCH
"LONGVIEW, TEXAS
"JOHN KERSHAW, PASTOR
"I, A. B. McPHERSON, HEREIN AFTER REFERED (SIC) TO AS CONTRACTOR DO HEREBY AGREE TO CONSTRUCT YOUR CHURCH BUILDING IN ACCORDANCE WITH PLANS AND SPECIFICATIONS AGREED UPON IN A GOOD WORKMANSHIP MANNER AND TO CONFORM WITH ALL EXISTING BUILDING CODES OF THE CITY OF LONGVIEW, TEXAS.
"IT IS FURTHER AGREED THAT THE ASPHALT DRIVEWAY AND PARKING AREA AGREED UPON SHALL BE INSTALLED BY THE BUILDING CONTRACTOR AND THAT THE ALLOWANCE FOR THE PURCHASE OF AUDITORIUM FURNITURE SHALL BE FIVE THOUSAND AND THREE HUNDRED DOLLARS, ($5,300.00) ANY AMOUNT OVER AND ABOVE THIS FIGURE SHALL BE THE RESPONSIBILITY OF THE CHURCH.
"THE BUILDING CONTRACTOR FURTHER AGREES TO FURNISH ALL LABOR, MATERIALS, TOOLS, INSURANCE, TAPS, PERMITS, FEES AND ALL OTHER EXPENSES NECESSARY TO PREFORM (SIC) A COMPLETE

TURN-KEY JOB ON THE WORK AGREED UPON.
"THE BUILDING CONTRACTOR SHALL BE RESPONSIBLE FOR PROVIDING HIS OWN INTERIM FINANCING FROM WHATEVER SOURCE HE DESIRES BUT DOES AGREE NOT TO DRAW MONEY ON THE JOB OVER AND ABOVE THE VALUE OF THE WORK IN PLACE OR MATERIALS STORED ON THE JOB SITE.
"WORK IS TO PROGRESS AS IS REASONABLY POSSIBLE BUT NO DEFINITE DATE OF COMPLETION IS REQUIRED. WHEN ALL WORK IS COMPLETED AS PER THE AGREEMENT, AND IS ACCEPTABLE BY THE CHURCH THEN THE TOTAL AMOUNT OF THE CONTRACT, ONE HUNDRED THIRTY-EIGHT THOUSAND DOLLARS, ($138,000.00), IS DUE AND PAYABLE.

---

"A.B. McPherson, Building Contractor
"1202 Walnut Street
"Gladewater, Texas
"WE DO HEREBY AGREE TO THE ABOVE TERMS OF THIS AGREEMENT.
"

---

claim is good as against him. The church further took the position that McPherson had made unreasonable and wrongful demands upon it for interest and attorney's fees before the construction contract had been substantially completed. There was no sworn plea of failure of consideration.

Appellant argues that the defense of "accommodation maker" is unavailable unless the note was executed without present or anticipated personal profit, gain or advantage, and that pleading "accommodation maker" is tantamount to pleading the note was executed without consideration; and, therefore, must be verified under Rule 93(g), T.R.C.P. Further argument is made by appellant that the trial court should have rendered judgment on the cross-action on the note against appellee because under Section 3.415, Texas Business and Commerce Code (UCC), appellee, as accommodation maker, would have had recourse against appellant as the party accommodated, and with the enforcement of that right of recourse, appellee would have obtained a building free of cost and McPherson would have received nothing.

Section 3.415, Texas Business and Commerce Code (UCC), provides in part:

"(a) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

"(b) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.

\* \* \* \* \* \*

"(e) An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party."

The July 22, 1971, contract provided that McPherson was obligated to provide the interim financing at his own cost. The record reveals the church did not know where McPherson would obtain the interim financing. The witness Kershaw testified that the purpose in executing the note[2] and deed of trust was "so Mr. McPherson could finance himself to build the building," and they were executed solely to accommodate

---

2. "Longview, Texas                                            August 23, A.D. 1971

"ONE HUNDRED EIGHTY (180) DAYS after date, I, we, or either of us, the undersigned, promise to pay to A. B. McPHERSON or order, the sum of ONE HUNDRED THIRTY EIGHT THOUSAND AND NO/100 ($138,000.00)—DOLLARS, with interest thereon from date until maturity at the rate of 7½ per centum per annum, the interest payable at maturity as it accrues, both prinicpal and interest payable at Longview, Texas, for value received.

"This note, to the extent of the amount herein mentioned, represents money this day borrowed by it from the said A. B. McPherson and, to secure the credit thus extended it has this day, by one (1) certain Deed of Trust, conveyed to C. Q. ABERNATHY, Trustee, the following lot or parcel of land:

(Property description)

which said land is fully described in said Deed of Trust.

"All past due principal and interest on this Note shall bear interest from the maturity thereof until paid, at the rate of ten per centum per annum.

"It is understood and agreed that failure to pay this Note, as above promised, or any installment of interest hereon, when due, shall, at the option of the holder of said Note, mature same and it shall at once become due and payable, and subject to foreclosure proceedings under said Deed of Trust.

"And it is hereby specially agreed that if this Note is placed in the hands of an attorney for collection, or if collected by suit or through Probate or Bankruptcy proceedings, the undersigned agree to pay ten per cent additional on the principal and interest then owing hereon as attorney's fees.

THE LONGVIEW UNITED PENTECOSTAL CHURCH, IN (sic)

"Due 23rd day of February, 1972

BY: _____JOHN KERSHAW_____
                                    President"

him in order that he could perform under the contract and get his interim financing.

There is no question here of a holder in due course. The bank is not a party to the suit. McPherson assigned the note to the bank as soon as he received it, but at the time of trial the bank had reassigned the note to him. The jury answered in issue 9 that the note was executed by the church to enable McPherson to obtain interim financing from the bank, and in issue 11 the jury found that the provision in the note for interest from date at the rate of 7½ per cent per annum was contrary to the terms of the contract whereby McPherson agreed to furnish his own interim financing. The record reveals that each time McPherson needed an advance on his interim financing, the bank required him to sign his personal note for each draw, and such advance was not credited to the $138,000 note previously assigned by him to the bank.

The quoted provision of the TB&C Code defines an accommodation party as "one who signs the instrument in any capacity for the purpose of lending his name to another party to it." According to 9 Tex. Jur.2nd, Bills and Notes, Sec. 63, p. 75, "He (accommodation party) is always a surety, which includes a guarantor, and that is his only distinguishing feature. He differs from other sureties only in that his liability is on the instrument and he is a surety for another party to it." See Note 1, Sec. 3.415, T.B. & C. Code.

In 2 Anderson, Uniform Commercial Code, Sec. 3–415:4, p. 1000 (1971), it is stated, "one who signs an instrument in any capacity for the purpose of lending his name to another party to it is an accommodation party, regardless of whether he received any compensation for so acting or did so gratuitously."

We are of the opinion that the church was not an accommodation party as defined by the UCC. The church was the maker of the note and McPherson was the payee; the church did not sign as a surety. The execution of the note may have been done as "an accommodation" to McPherson but the facts do not constitute the church an accommodation party. If the church was an accommodation party it would not be liable to the party accommodated, and the fact that an accommodation party did not receive any consideration is immaterial. 2 Anderson, UCC, Sec. 3–415:8, p. 1002.

While the jury found that the church executed the note to enable McPherson to secure interim financing, the church did not become an accommodation party as a matter of law. It did not lend its name to another party to it *as a surety.* No contention is made that there was a conditional delivery or delivery for a special purpose, nor was there evidence to that effect.

■ There is a distinction between a parol condition affecting the delivery of a negotiable instrument and one affecting its payment. Delivery of a negotiable instrument upon a condition or for a special purpose only may be shown by parol as between the immediate parties to it. *Kuper v. Schmidt,* 161 Tex. 189, 338 S.W.2d 948, 952 (1960); *Helmke v. Prasifka,* 17 S.W.2d 463, 465 (Tex.Civ.App., San Antonio 1929, writ ref'd); *Abell v. Waggoner,* 391 S.W.2d 91, 93 (Tex.Civ.App., Amarillo 1965, no writ); *Cicero Smith Lumber Co v. Gaston,* 447 S.W.2d 736, 738 (Tex.Civ.App., Amarillo 1969, writ ref'd n.r.e.); *Texas Export Development Corp. v. Schleder,* 519 S.W.2d 134, 137 (Tex.Civ.App., Dallas 1974, no writ); Tex.Bus. & Comm.Code, Sec. 3.306.

Section 3.306, T.B. & C. Code, provides:

"Unless he has the rights of a holder in due course any person takes the instrument subject to

\*　\*　\*　\*　\*　\*

"(3) the defenses of want or failure of consideration \* \* \* or delivery for a special purpose \* \* \*"

■ If delivery is on condition or for a special purpose the note never becomes operational. *Helmke v. Prasifka,* supra; *Schwarz v. Straus-Frank Co.,* 382 S.W.2d 176 (Tex.Civ.App., San Antonio 1964, writ ref'd n.r.e.).

■ A parol condition or agreement relating to *payment* of a delivered note, as we are here concerned with, is not enforceable if it operates to add to, take away or vary the terms of the written agreement. *Kuper v. Schmidt,* supra; *Helmke v. Prasifka,* supra; *Shepherd v. Erickson,* 416 S.W.2d 450, 452 (Tex.Civ.App., Houston [1st Dist.] 1967, writ ref'd n.r.e.); *Roseborough v. Phillips,* 389 S.W.2d 593, 596 (Tex.Civ.App., Dallas 1965, no writ).

## CONSIDERING THE NOTE AND CONTRACT TOGETHER

The contract was dated July 22, 1971, and, though unsigned, we have concluded it was a written contract. The note was dated August 23, 1971, and, even though it pertained to financing the construction which was the subject of the contract, it made no reference to such contract. In rendering judgment the trial court apparently acted upon the premise that if the provisions of the note conflicted with the provisions of the contract then the conflicting provisions of the note must give way to the contract, and the court apparently construed the evidence and verdict as constituting appellee church an accommodation party. We do not agree with that premise.

In considering the question of whether a later contract is deemed to be independent this court said in *M. J. Delaney Co. v. Murchison,* 393 S.W.2d 705, 709 (Tex.Civ. App. 1965, no writ):

"The question of whether a later contract is to be deemed as an independent one or to become incorporated with or correlated to the old agreement is to be determined by the intention of the parties *as expressed in the later agreement. Frierson v. International Agricultural Corp.,* 24 Tenn.App. 616, 148 S.W.2d 27. (Emphasis added.)

" 'In order that separate writings may be considered together their relation or connection with each other must appear on their face; and this requirement is satisfied either by express reference from one writing to the other, or, at least where each writing is signed, by internal evidence of their unity.' *Briden v. Osborne,* 184 S.W.2d 860 (Tex.Civ.App.)."

■ We are not overlooking the general rule in Texas that where two or more instruments, executed contemporaneously or at different times, pertain to the same transaction, the instruments will be read together even though they do not expressly refer to each other. *Board of Ins. Com'rs. v. Great Southern Life Ins. Co.,* 150 Tex. 258, 239 S.W.2d 803 (1951); *Texas State Bank of Austin v. Sharp,* 506 S.W.2d 761, 763 (Tex.Civ.App., Austin 1974, writ ref'd n.r.e.).

And the rule is also applicable to instruments executed in connection with the same transaction when one of the instruments is a promissory note. *Texas State Bank of Austin v. Sharp,* supra.

The T.B. & C. Code (U.C.C.), Sec. 3.119(a) provides:

"Other Writings Affecting Instrument

"(a) As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction, except that a holder in due course is not affected by any limitation of his rights arising out of the separate written agreement if he had no notice of the limitation when he took the instrument."

Comment No. 3 under the above UCC section states, "If there is outright contradiction between the two, as where the note is for $1,000 but the accompanying mortgage recites that it is for $2,000, the note may be held to stand on its own feet and not to be affected by the contradiction."

And in 2 Anderson, Uniform Commercial Code, Sec. 3–119:3, p. 732, is found this language:

"The fact that contemporaneous agreements are construed together does not mean that in contemplation of law they are reduced to being a single instrument where this would be contrary to the intention of the parties. That is, although contemporaneous, the agreements may

have been intended to be separate instruments and to provide for entirely different things. Thus, it has been said that the pledge of real estate to secure a promise to pay is another distinct agreement which ordinarily is not intended to affect in the least a promise to pay in a promissory note but only to give a remedy for failure to carry out that promise. *In the absence of incorporation of one instrument by another, their meaning may be such that it may be held that the provisions of one are not to be read into the other * * *"* (Emphasis added.)

There being no reference in the note to the contract we hold that they are not to be read together as one contract. Therefore, the last writing between the parties will prevail, and the terms and provisions of the note are enforceable against appellee.

If we are mistaken in our conclusion that the contract and the note are not to be read together as one contract, then, if they be interpreted together, and they are inconsistent, the later one prevails, and the remainder of the first contract, not being inconsistent in substance and purpose with the second, may be enforced. *Crown Western Investments, Inc. v. Mercantile National Bank at Dallas,* 504 S.W.2d 785, 789 (Tex.Civ.App., Tyler 1974, no writ).

The judgment of the trial court is reversed and the cause is remanded to that court with instructions to render judgment for appellant for interest from maturity and attorney's fees according to the terms and conditions of the note.